UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------
DR. STEPHEN E. WILLIAMS,
DR. JAMES P. LALLEY,
DR. HILARY A. LOCHTE,
DR. JAMIE N. DEWATERS,
DR. NANCY KACZMAREK, AND
DR. JULIE H. CARTER

        Plaintiffs,

     v.

D'YOUVILLE COLLEGE,
JBCN EDUCATION, INC.,
CHALKBOARD SCHOOL SOLUTIONS, LLP,
NATION OF LEARNING EXCELLENCE,
AND DOES 1-5,

        Defendants.
---------------------------------------------------------

**VERIFIED COMPLAINT**

**JURY DEMANDED**

Plaintiffs by their attorneys, The Law Office of Stephanie Adams, PLLC, Stephanie A.

Adams and Sallie G. Randolph of counsel, as and for their Verified Complaint, herein

aver as follows:

## JURISDICTION AND VENUE

1.    This is an action for copyright infringement arising under the Copyright Act of

1976 (17 U.S.C. §§106 and 501), False Designation of Origin (15 U.S.C. §1125(a)), New

York Civil Rights Law §§50 and 51, New York General Business Law §349(a) and (h),

unjust enrichment, and fraudulent inducement.  This court has jurisdiction of this action

under 28 U.S.C. §1331, 28 U.S.C. §1338(a), and 28 U.S.C. §1338(b).

2.    Venue is proper under 28 U.S.C. §§ 1391 because all the named Defendants

(hereinafter, "the "Defendants") are either residents of New York or are a foreign

corporation not resident in the United States of America, and this is the judicial district in

which a substantial part of the events, acts, or omissions giving rise to the claims

occurred.

## PARTIES

3.     Plaintiff  Stephen E. Williams, PhD. ("Dr. Williams") was at all times relevant to

the matters alleged in this complaint, aside from actions occurring after December, 2020,

a resident of Buffalo, New York; as of December, 2020, Dr. Williams has been and

currently is a resident of New Hampshire.

4.     Plaintiff Dr. Williams was employed by Defendant D'Youville College for 25

years, and upon termination, his annual salary was $85,299.00.

5.     Plaintiff Dr. Williams' narrative of his academic and professional achievements at

D'Youville ("Williams Narrative") is attached as (Exhibit "A").

6.     Plaintiff James P. Lalley, Ph.D. ("Dr. Lalley") was at all times relevant to the

matters alleged in this complaint a resident of Buffalo, New York.

7.     Plaintiff Dr. Lalley was employed by Defendant D'Youville College for 18 years,

and upon termination, his annual salary was $81,389.00 a year.

8.     Plaintiff Dr. Lalley's' curriculum vitae, showing his academic and professional;

achievements ("Lalley CV") is attached as (Exhibit "B").

9.     Plaintiff Hilary A. Lochte, Ph.D. ("Dr. Lochte") was at all times relevant to the

matters alleged in this complaint a resident of Buffalo, New York.

10.     Plaintiff Dr.  Lochte was employed by Defendant D'Youville College for 19

years, and upon termination, her annual salary was at least $80,000.00.

11.     Plaintiff Dr. Lochte's curriculum vitae, showing her academic and professional

achievements ("Lochte CV") is attached as (Exhibit "C").

12.     Plaintiff Jamie N. DeWaters Ph.D. ("Dr. DeWaters") was at all times relevant to the matters alleged in this complaint a resident of Buffalo, New York.

13.     Plaintiff Dr. DeWaters was employed by Defendant D'Youville College for 37 years, and upon termination, her annual salary was $86,055.14.

14.     Plaintiff Dr. DeWaters' curriculum vitae, showing her academic and professional achievements ("DeWaters CV") is attached as (Exhibit "D").

15.     Plaintiff Nancy Kaczmarek, GNSH, Ph.D., CA ("Sister Nancy") was at all times relevant to the matters alleged in this complaint a resident of Buffalo, New York.

16.     Plaintiff Sister Nancy was employed by Defendant D'Youville College for 37 years, and upon termination, her annual salary was $80,399.00.

17.     Plaintiff Sister Nancy's curriculum vitae, showing her academic and professional achievements ("Sister Nancy CV") is attached as (Exhibit "E").

18.     Plaintiff Julie H. Carter Ph.D. ("Dr. Carter") was at all times relevant to the matters alleged in this complaint a resident of Buffalo, New York.

19.     Plaintiff Dr. Carter was employed by Defendant D'Youville College for 3 years, and upon termination, her annual salary was $63,220.00.

20.     Plaintiff Dr. Carter's curriculum vitae, showing her academic and professional achievements ("Carter CV") is attached as (Exhibit "F").

21.     Defendant D'Youville College ("D'Youville College") is and was at all times relevant to the matters alleged in this complaint an institution of higher education chartered by the New York State Education Department, with a primary location at 320 Porter Avenue, Buffalo, New York.

22.     Defendant JBCN Education, Inc., holds itself out as an educational institutional based in Mumbai, India, with a primary business address of JBCN International School, Yogi Tower (Citi Tower Building), Dr. S.S Rao Road, Mumbai, Maharashtra 400012, India.

23.     Defendant Chalkboard School Solutions, LLP ("Chalkboard") holds itself out as an educational institution based in Mumbai, India, with a primary business address of Office No. A 905 PL- 18/19, Sector-15, CBD Belapur, Navi Mumbai Thane MH 400614 India.

24.     Defendant Nation of Learning Excellence ("NLE") is a partnership comprised of Defendants D'Youville College, JBCN, and Chalkboard Solutions, and holds itself out as offering educational services located in Buffalo, New York.

25.     Defendants Does 1, 2, 3, 4, and 5 are Parties, as yet unidentified, who are directly, contributorily or vicariously liable for some or all of the Causes of Action brought by the Plaintiffs through either their associations with the named Defendants, or their direct actions.

## THE FACTS

26.     This action for copyright infringement, false designation of origin, violations of the New York's Civil Rights Law and General Business Law, and alternative causes of action of unjust enrichment and fraudulent inducement, is brought before this Court to remedy a chain of wrongs orchestrated by Defendants to strip the Plaintiffs of their academic appointments, of their intellectual property, of their livelihoods, and of their very identities, to the commercial benefit of Defendants, and financial and reputational damage of Plaintiffs.

27.     The story starts with Defendant D'Youville's decision to terminate Plaintiffs' program and department unless added sources of revenue could be attributed to it.

28.     The story continues with named Defendants' request to the Plaintiffs to develop the curriculum and materials for a Masters in Education degree Defendant D'Youville could award in collaboration with unaccredited institutions (hereinafter, the "Partnership Masters").

29.     The story ends with all the named Defendants using, without proper authorization, Plaintiffs' names, images, intellectual property, work product, and academic reputations to market and deliver an educational product they offer for sale both within the state of New York, throughout the United States, and internationally, after Defendant D'Youville terminated the Plaintiffs.

30.     The chain of events described in Paargraphs "26" through "29", above, started simply: In 2017, Defendant D'Youville's Education Department's full-time faculty was comprised of the six Plaintiffs.

31.     In or around 2017, Defendant D'Youville requested the six Plaintiffs to develop the curriculum and materials for the Partnership Masters.

32.     Plaintiffs were led to believe by Defendant D'Youville's leadership that this new initiative would create additional revenue and eliminate the possibility of reducing the Department and its operations.

33.     Plaintiffs initiated the development of the requested materials on or about November, 2017, and worked on them until their detailed curriculum was completed on or about September 2018.

34.     The joint work of the detailed curriculum referenced in Paragraphs "31" through "33", above, was created without any additional compensation to the Plaintiffs.

35.     The intellectual property resulting from the actions set forth Paragraphs "31" through "33" above is a joint work entitled *A Professional Masters Degree in Education: A detailed guide from planning to implementation* (the "Subject Work"), owned by the Plaintiffs.

36.     The copyright registration number of the Subject Work is TXu 2-217-371. A true and correct copy of this Certificate is attached hereto as Exhibit "G".

37.     The Plaintiffs' own the Subject Work as joint authors.

38.     Ownership as asserted in "37", above, is confirmed in part because, as expressly stated in Article XX of the document called "A Cooperative Agreement 2017-2021 by and between D'YOUVILLE COLLEGE and D'YOUVILLE COLLEGE CHAPTER, AAUP" (attached as Exhibit "H", hereinafter called "the Union Contract"), all full-time faculty of Defendant D'Youville own the work they "created, made or originated" during the course of their employment.

39.     On or about January, 2018, Defendants D'Youville, JBCN, and Chalkboard announced their partnership to offer a "Professional Masters in Education."

40.     The Subject Work authored by the Plaintiffs contains the materials used to register, teach, and promote the "Professional Masters in Education".

41.     A typical example of the announced partnership between Defendants D'Youville, JBCN, and Chalkboard, called the "Nation of Learning Excellence" (hereinafter, "Defendant NLE"), is shown in the below announcement by Defendant D'Youville:



*D'Youville Extends Its Reach Across the Globe to Asia,*

http://www.dyc.edu/news/2018/0301-jbcn-education-india.aspx (last visited on August

25, 2021).

42.     On January 23rd and 24th of 2018, as part of the launch of the NLE Partnership,

Plaintiffs Dr. Lochte and Dr. Carter were required by Defendant D'Youville, their

employer, to attend the Nation of Learning Excellence's "Mindfulness in Education"

conference in Mumbai India, as shown here:



*D'youville JBCN Education India*, http://www.dyc.edu/news/2018/0301-jbcn-education-india.aspx (last visited on August 25, 2021).

43.     The "Nation of Learning Excellence" partnership is, as of August 25, 2021, consistently depicted by all named Defendants as a "partnership" that includes Defendants D'Youville, JBCN, and Chalkboard, as shown in the brochure published on the Defendant NLE's website at http://www.nle.org.in/documents/NLE-M.Ed-Brochure.pdf as of August 25, 2021:

8

## B. The D'Youville Masters in Education

The Professional Masters in Education by D'Youville College is designed as the intellectual and professional next step for practicing teachers and working professionals through their online, hybrid (online and personal instruction) and study abroad (optional) sessions. It is structured in three modules, taken over the course of one academic year. One of the important highlights of this Masters programme is that you get to continue working in your current job/engagement while receiving a world class education. Students will receive a certificate of completion for each course or module they finish and those students who complete the entire MS in Education programme will be awarded a diploma from D'Youville College.

**D'Youville** is a private college located on the vibrant west side of Buffalo, preparing students for the 21st-century. D'Youville excels in helping students reach their career goals while instilling character to become change agents for the greater good.

Featuring an urban, growing campus community of over 3,000 students, D'Youville offers more than 50 majors in undergraduate, graduate, and doctoral studies including advanced certificates and accelerated learning programmes.

The mission of D'Youville College's Department of Education is to collaboratively enhance public and non-public education through the preparation of reflective practitioners and by advancing professional practices.

School teachers play a vital role in a child's development. As a teacher, you have the potential to influence thousands of children and youth throughout your career. D'Youville College has a rich history of preparing some of the finest teachers in the region. Our education programs are widely recognized and lead to New York State initial or professional certification in many specialties. Our students are inspired to make a difference in improving the educational processes in the organizations and communities they serve.

The "*NLE Partnership Brochure*," (dated 2021), attached as Exhibit "I".

44.     The abundant marketing materials for the NLE Partnership, some still being actively published in updated versions and released by Defendants as of August 25, 2021, include posts such as this marketing video depicting Plaintiff Dr. Lochte:



*D'youville JBCN ChalkBoard Partnership,*

https://www.youtube.com/watch?v=utQFlrX6dFQ ((last visited on August 25, 2021).

45.     On or about September 7th of 2018, shortly after the launch of the NLE

Partnership, every single one of the Plaintiffs were terminated from their appointment as

a full-time faculty member and employee of Defendant D'Youville College.

46.     When they were terminated, each Plaintiff was offered a severance contract they

refused to sign ("Severance Contract").  A copy of the Severance Contract is attached as

Exhibit "J".

47.     On or about January 2019, upon information and belief, the Defendants first

offered courses using the Subject Work during a semester when Plaintiffs were not

employed.

48.     Shortly after their termination, all of the six Plaintiffs filed age discrimination complaints with the Equal Employment Opportunity Commission ("EEOC").

49.     After the EEOC issued findings of "No Probable Cause" for age discrimination, four of the Plaintiffs, Dr. Lalley, Dr. Williams, Dr. DeWaters, and Sister Nancy, filed individual actions alleging age discrimination in the Western District of New York. Those actions are pending as of the filing of this action and are separate and distinct claims from the causes of action claimed herein.

50.     Shortly after the termination of the Plaintiffs, the D'Youville College Chapter of The American Association of University Professors, the union representing faculty at D'Youville College (the "Faculty Union"), filed grievances related to the terminations (the "Termination Grievance") and the unauthorized use of the Plaintiffs' intellectual property (the "Copyright Grievance"); those grievances are attached as Exhibits "K" and "L" respectively.

51.     Upon information and belief, Defendants are currently promoting the Partnership Masters for commercial purposes.

52.     Upon information and belief, Defendants are currently promoting other educational products and services that use the Subject Work for commercial purposes.

53.     Upon information and belief, Defendants are currently using the names, likenesses, and academic reputations of the Plaintiffs to promote the products listed in Paragraphs "51" and "52" above.

54.     For example, the use asserted in "53", above, as of August 25, 2021, Plaintiff Dr. Lochte is untruthfully listed as the "School of Education Chair, D'Youville College" on the website of Defendant and NLE partnership partner JCBN:



*Jbcnschool Blog Benefits*, https://www.jbcnschool.edu.in/blog/benefits-of-m-ed/ (last visited on August 25, 2021).

55.    As another recent example of the use asserted in "53", above, upon information and belief, the names and academic credentials of Plaintiffs Dr. DeWaters, Dr. Lalley, Dr. Lochte, Dr. Williams, and Sister Nancy are listed as "Full-time Undergraduate Faculty" in the "2021-2022 D'Youville Undergraduate Catalog", published in 2021.

56.    As an example of the recent publication asserted in Paragraph "55", above, below is a screenshot of the 2021-2022 catalog listing of Plaintiff Sister Nancy Kaczmarek, taken on August 26, 2021, from the current website of Defendant D'Youville:



*Dyouville Undergraduate Faculty*, https://catalog.dyouville.edu/undergraduate-faculty/

(last visited on August 26, 2021).

57.    Based on the uses set forth in Paragraphs "54" through "56", above, Plaintiffs have a reasonable suspicion that their names, images, and academic reputations are also being used without authorization for marketing purposes by Defendants in direct marketing materials such as emails, targeted electronic advertisements, and mailed materials.

58.    In addition to the use of Plaintiffs' names and reputations to market the Partnership Masters as listed in Paragraphs "53" through "56", above, upon information and belief and reasonable suspicion, course materials authored and owned by the Plaintiffs and included in the Subject Work have been and are still being used by the Defendants without permission.

59.    As but one instance of ongoing unauthorized use of the Subject Work, the "NLE Partnership Brochure" (attached as Exhibit "I") lists courses that are delivered using materials from the Subject Work.

60.     As another example of ongoing unauthorized use of the Subject Work, every semester since their termination (Spring 2019, Summer 2019, Fall 2019, Spring 2020, Summer 2020, Fall 2020, Spring 2021, Summer 2021), upon information and belief, Defendants D'Youville, JCBN, Chalkboard, and the NLE Partnership have offered courses and programs whose materials incorporate the Subject Work or are substantially similar to it.

61.     As another example of unauthorized use of the Subject Work, the Copyright Grievance brought by the Faculty Union was supported by Plaintiffs, who provided a chart of courses offered by Defendant D'Youville that infringed the Subject Work (attached as Exhibit "M" and incorporated by reference herein).

62.     The Copyright Grievance was decided by the Defendant D'Youville's Grievance Committee on September 25, 2020.  The committee found the "grievance may have merit."  A copy of that decision is attached as Exhibit "N".

63.     As can be seen in Exhibit "N", the Grievance Committee stated further evaluation was needed of the "actual course materials."

64.     As can be seen in Exhibit "O", the disclosure of the course materials was a requirement of a resolution of a complaint by the Faculty Union to the National Labor Relations Board (case number 03-CA-247511).

65.     Except for a permanent license to use a "syllabus" as defined in Article XX of the Union Contract for pedagogical purposes, any license under the Union Contract to use the Subject Work for marketing and offering course instruction was terminated when Defendant D'Youville terminated the Plaintiffs.

66.     No contract currently exists between the Plaintiffs and the Defendant D'Youville, or any of the named Defendants.

67.     Plaintiffs, each individually for themselves, and upon information and belief for the others, aver they have not entered any agreement with Defendants permitting use of the materials comprising the Subject Work.

68.     Plaintiffs sent Defendant D'Youville College a "litigation hold" notice on or about August 19, 2019 (attached as Exhibit "P").

69.     Plaintiffs aver on their own behalf, and upon mutual information and belief, they have not conferred any right to use their names, images, and likenesses for commercial purposes, including the marketing of educational services, to any of the Defendants.

70.     The Defendants' unauthorized and commercial uses of the names, likenesses, and significant academic reputations of the Plaintiffs for commercial purposes conveys a false impression to any potential customer within the state of New York, the United States, or internationally, that the experience and skills of the Plaintiffs will be accessible to students who enroll in the Partnership Masters program or seek to obtain the Professional Masters in Education degree.

71.     Students both within the State of New York, the United States, and throughout the world may enroll in the Partnership Masters program on a rolling basis using Defendant D'Youville, Defendant NLE, and Defendant JCBN's websites, pay to attend the program, and be deceived regarding who will offer instruction and leadership of the program.

72.     Because of Defendants' use of Plaintiffs' assets, names, and reputations, students both within the State of New York, the United States, and throughout the world may

enroll in the Partnership Masters program with a reasonable but mistaken belief that they will be learning from the Plaintiffs.

73.     The false association with the educational services offered by Defendants has damaged and will continue to damage the Plaintiffs' professional reputations and ability to find work in their academic fields.

74.     The ongoing violation of being falsely associated with the offering of the Partnership Masters and the Professional Masters in Education degree causes hurt, distress, and is an ongoing source of frustration for the Plaintiffs.

75.     Upon information, belief, and reasonable suspicion, students both within the State of New York, the United States, and throughout the world who enroll in the Partnership Masters program have used and will be provided with copies of Plaintiffs' Subject Work, or works substantially similar thereto, while enrolled in and attending the courses offered that incorporate the Subject Work.

76.     Upon information and belief, employees and associates of Defendants within the State of New York, the United States, and throughout the world who are hired to teach courses program using the Subject Work have generated, distributed, and prepared derivative copies of the Subject Work, or works substantially similar to the Subject Work, to teach the courses offered by all named Defendants.

COUNT I
COPYRIGHT INFRINGEMENT
AGAINST ALL DEFENDANTS

77.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "76", above, inclusive as if set forth in full as part of Count I.

78.     Upon information and belief, all Defendants have duplicated, distributed, offered for sale, displayed and prepared works derivative of the Subject Work without permission.

79.     The natural and probable and foreseeable result of Defendant's wrongful conduct has been to deprive Plaintiffs of the financial benefit they reasonably anticipated would result from their efforts in creating the Subject Work, and to benefit the Defendants.

80.     Plaintiffs are entitled to recover from the Defendants actual damages they have sustained and will sustain as a result of the infringement, including lost employment income and benefits, along with any gains, profits, advantages obtained by Defendants arising out of Defendants' acts of infringement.

COUNT II
CONTRIBUTORY COPYRIGHT INFRINGEMENT
AGAINST ALL DEFENDANTS

81.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "80", above, inclusive as if set forth in full as part of Count II.

82.    Defendants have encouraged, facilitated, licensed, and/or permitted the display, distribution, and reproduction of unauthorized copies of the Subject Work, and enabled the creation of works derived therefrom.

83.    Defendants knew or should have known that neither they nor the users were authorized to distribute, display, create works derivative of, and reproduce the Subject Work in whole or in part.

84.    Defendants derived substantial benefit from the infringing conduct of the users.

85.    Defendants' provision of the Subject Work or portions of it to unauthorized parties resulted in extensive cost savings to themselves and, at the same time, deprived Plaintiffs of employment income to which they would have been entitled.

86.    The natural and probable and foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiffs of the financial benefit that they reasonably expected to result from their efforts in creating the Subject Work.

87.    Plaintiffs are entitled to recover actual damages they have sustained and will sustain, including but not limited to lost employment income, along with any gains, profits, or advantages, arising out of Defendants' acts of infringement.


COUNT III
VICARIOUS COPYRIGHT INFRINGEMENT
AGAINST ALL NAMED DEFENDANTS

88.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "87", inclusive as if set forth in full as part of Count III.

89.     At all times relevant hereto, Defendants D'Youville, JCBN, and Chalkboard, operating as the NLE Partnership, had the right and ability to supervise and control the activity of their partners, with respect to the content of the Subject Work.

90.     Defendants each had knowledge of its other partners' infringing activity and had a direct financial interest in the exploitation of the Subject Work.

91.     The natural and probable and foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiffs of the financial benefit they reasonably expected to result from their efforts in creating the Subject Work.

92.     Plaintiffs are entitled to recover actual damages they have sustained and will sustain, including lost employment income, along with any gains, profits, advantages, or unjust enrichment obtained by Defendants arising out of their repeated and ongoing acts of infringement.

COUNT IV
VIOLATION OF PLAINTIFFS' RIGHT TO PRIVACY UNDER NEW YORK
CIVIL RIGHTS LAW §§50 and 51
AGAINST ALL DEFENDANTS

93.     Plaintiffs realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "92", above inclusive as if set forth in full as part of Count IV.

94.     Defendants have knowingly used the names, pictures, and credentials of the Plaintiffs within the State of New York for advertising purposes and for the purposes of trade without the written consent of Plaintiffs, in violation of New York Civil Rights Law §50, causing injury to Plaintiffs.

95.     The most recent unauthorized use known to Plaintiffs, newly published in the Defendant D'Youville's 2021-2022 catalog, is the use of five of the Plaintiffs' names and credentials within the State of New York as shown in Paragraphs "55" and "56", above.

96.     Plaintiffs have sustained and are sustaining injuries by reason of such knowing, unauthorized use, and are entitled per New York Civil Rights Law §51 to an injunction barring the continued unauthorized use of their names and images, to damages, and at the discretion of the jury, exemplary damages.

COUNT V
FALSE DESIGNATION OF ORIGIN
PER. 15 U.S.C. §1125(a)(1)(B)
AGAINST ALL DEFENDANTS

97.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations in Paragraphs "1" through "96", inclusive as if set forth in full as part of Count V.

98.     Defendants, in connection with offering educational services, have used and continue to use in commerce the names and credentials of Plaintiffs in a manner that is false and misleading as to the origins of the offered service.

99.     Defendants, in commercial advertising and/or promotion, have misrepresented the nature, characteristics, and qualities of the Partnership Masters and the Professional Masters Degree in Education, and Plaintiffs believe they are likely to be damaged by this act.

100.   On the basis of the facts and claims set forth on Paragraphs "97" through "99" above, Plaintiffs are entitled to recover Defendants' gross profits attributable to the false designation, Plaintiffs' damages including loss of salary and benefits, and the costs of bringing this action.

COUNT VI
DECEPTIVE ACTS AND PRACTICES PER
§349 OF NEW YORK'S GENERAL BUSINESS LAW

101.   Plaintiffs realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "100", above, inclusive as if set forth in full as part of Count VI.

102.   By portraying the Plaintiffs as associated with the delivery of educational services Plaintiffs do not deliver,  Defendants have engaged in deceptive acts and practices in the conduct of their business in the State of New York.

103.   The conduct described in Paragraph "102" above, is in violation of New York's General Business Law §349(a).

104.   The violation set forth in Paragraph "103", above, has caused the Plaintiffs injury such that Plaintiffs are entitled to bring this action per New York's General Business Law §349(h).

105.   Plaintiffs are entitled by New York's General Business Law §349(h) to an order enjoining further deceptive use of their names, images, and credentials, the actual damages they have sustained and will sustain as a result of their injuries, including lost employment income, along with any gains, profits, advantages, and reasonable attorney's fees.

COUNT VII
AS AND FOR AN ALTERNATIVE CAUSE OF ACTION
TO COPYRIGHT INFRINGEMENT:
UNJUST ENRICHMENT BY ALL NAMED DEFENDANTS

106.    Plaintiff realleges and incorporates by reference as if fully set forth herein the

allegations in Paragraphs "1" through "105", inclusive as if set forth in full as part of

Count VII.

107.    Defendant D'Youville College, in partnership with Defendants JCBN and

Chalkboard, directed Plaintiffs to generate certain materials, terminated the Plaintiffs, and

continues to use those certain materials without the Plaintiffs' authorization.

108.    As of the date of their termination (September 7, 2018), the Plaintiffs were not

and still are no longer members of the bargaining unit that was a party to the Union

Contract and there is no other contract between the Plaintiffs and Defendants.

109.    Based on the recitals in Paragraphs "107" through "108", above, as and for an

alternative cause of action to Counts I, II, and III (based on copyright), Defendants are

being enriched at the expense of the Plaintiffs, and equity and good conscience require

restitution.

COUNT VIII
AS AND FOR AN ALTERNATIVE CAUSE OF ACTION
TO COPYRIGHT INFRINGEMENT:
FRAUDULENT INDUCEMENT BY ALL NAMED DEFENDANTS

110.   Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in Paragraphs "1" through "109", inclusive as if set forth in full as part of Count VIII.

111.   Defendant D'Youville College, in partnership with JCBN and Chalkboard, induced Plaintiffs to generate certain materials and participate in organizational events with a material misrepresentation, still being made as of the filing of this action, that Plaintiffs would be the individuals to lead and teach certain courses and programs.

112.   Up until the date of their termination (September 7, 2021), the Plaintiffs had reasonably relied on the Defendants' misrepresentation that they would be the professionals leading and teaching with the materials they were developing.

113.   The legal duty to not deceive the Plaintiffs regarding the education professionals who would lead and teach the courses associated with the materials is not set by the Union Contract, nor any other contract between Plaintiffs and Defendants, but by the duty to deal fairly and honestly when offering the terms for labor and designating the source of an educational product.

114.   Based on the recitals in Paragraphs "110" through "113", above, as and for an alternative cause of action to Counts I, II, and III (based on copyright), Defendants fraudulently induced Plaintiffs to produce the materials and participate in events enabling Defendants to portray Plaintiffs as the education professionals delivering their services, and continue to benefit from that fraudulent inducement to this day.

115.    On the basis of Paragraphs "110" through "114", above, Plaintiffs are due their

actual damages in the amount of their salaries and benefits, together with the costs of

bringing this action, including reasonable attorneys fees.

116.  This alternate cause of action does not involve a claim for replevin or conversion of

chattels.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF** prays for judgment against the Defendants as follows:

1.   Finding that the Defendants have directly, contributorily, and/or vicariously

infringed the Plaintiffs' copyright in the Subject Work.

2.   Ordering that all the Defendants, their directors and officers, agents, servants,

employees, and all other persons in active concert or in privity or in participation with

them, be enjoined from directly or indirectly infringing Plaintiffs' copyrights in the

Subject Work or to participate or assist in any such activity.

3.   That judgment be entered for Plaintiffs and against Defendants for Plaintiffs'

actual damages according to proof and for any profits attributable to infringements of

Plaintiffs' copyrights in accordance with proof.

4.   That Defendants jointly and severally be required to account for all profits, gains,

and advantages derived from its acts of infringement and for its other violations of

law.

5.  That all gains, profits, advantages, and unjust enrichment derived by Defendants from its acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of the Plaintiffs.

6.  That if copyright violation is not found, the Court find in the alternative that the Defendants to have been jointly and severally unjustly enriched by the creation and unauthorized use of the Subject Work and the identities and credentials of the Plaintiffs, and are owed damages, costs, and reasonable attorneys' fees.

7.  That if copyright violation is not found, the Court find in the alternative that the Defendants fraudulently induced the creation and unauthorized use of the Subject Work and their ongoing use of the identities and credentials of the Plaintiffs, and are owed damages, costs, and reasonable attorneys' fees.

8.  That the Court find that the Defendants have violated Plaintiffs' rights under New York State Civil Rights Law §50.

9.  That the Court find that the Plaintiffs are entitled to a preliminary injunction, damages, and exemplary damages per New York State Civil Rights Law §51.

10.  That the Court find that the Plaintiffs have been injured by reason of Defendants' knowing violation of §349 of New York's General Business Law, and enjoin further use of Plaintiff's names and reputations, and award of damages equivalent f three times the actual damages up to one thousand dollars, and award reasonable attorney's fees to the Plaintiff.

11.  That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.

Dated 9/1/2021

LAW OFFICE OF STEPHANIE ADAMS, PLLC

Sallie G. Randolph, Esq.
Attorney for the Plaintiffs
363 Grant Street, Suite One
Buffalo, New York 14213
Bar # 2743953
(716) 464-3386
Fax: 716-262-0984
randolph@losapllc.com


Stephanie A. Adams, Esq.
Attorney for the Plaintiffs
363 Grant Street, Suite One
Buffalo, New York 14213
Bar # 3977568
(716) 464-3386
Fax: 716-262-0984
Adams@stephaniecoleadams.com


JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable to a jury.

Dated:

LAW OFFICE OF STEPHANIE ADAMS, PLLC

Sallie G. Randolph, Esq.
Attorney for the Plaintiffs
363 Grant Street, Suite One
Buffalo, New York 14213
Bar # 2743953
(716) 464-3386
Fax: 716-262-0984
randolph@losapllc.com

26

Stephanie A. Adams, Esq.
Attorney for the Plaintiffs
363 Grant Street, Suite One
Buffalo, New York 14213
Bar # 3977568
(716) 464-3386
Fax: 716-262-0984
Adams@stephaniecoleadams.com

PLAINTIFF VERIFICATION

STATE OF NEW YORK    )
                       ) SS:
COUNTY OF ERIE   )

## VERIFICATION

     STEPHEN E. WILLIAMS, being duly sworn, deposes and says that he is a Plaintiff named

in the within action; that he has read the foregoing Complaint and knows the contents thereof and

that the same is true to the best of his knowledge, except as to the matters therein stated and to be

alleged upon information and belief, and as to those matters he believes them to be true.

DATED:       _____, NH
           September 4, 2021

                                       _____
                                  STEPHEN E. WILLIAMS
                                  PLAINTIFF

Sworn to before me this 4th
day of September, 2021.

_____
Notary Public

RITA M. KENYON
STATE OF
· MY ·
COMMISSION
EXPIRES
MAY 16,
2023
NEW HAMPSHIRE
COMMISSIONER OF DEEDS

PLAINTIFF VERIFICATION

STATE OF NEW YORK      )
                                                  ) SS:
COUNTY OF ERIE   )

## <u>VERIFICATION</u>

JAMES P. LALLEY, being duly sworn, deposes and says that he is a Plaintiff named in the within action; that he has read the foregoing Complaint and knows the contents thereof and that the same is true to the best of his knowledge, except as to the matters therein stated and to be alleged upon information and belief, and as to those matters he believes them to be true.

DATED:          Buffalo, NY
                        September 3, 2021

JAMES P. LALLEY
PLAINTIFF

Sworn to before me this  3
day of September, 2021.

Notary Public

STEPHANIE A. ADAMS
Notary Public, State of New York
Qualified in Erie County
Reg. No. 02AD6061216
Commission Expires July 16, 20 22

PLAINTIFF VERIFICATION

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF ERIE   )

## VERIFICATION

JULIE H. CARTER, being duly sworn, deposes and says that she is a Plaintiff named in

the within action; that she has read the foregoing Complaint and knows the contents thereof and

that the same is true to the best of her knowledge, except as to the matters therein stated and to be

alleged upon information and belief, and as to those matters she believes them to be true.

DATED:        Buffalo, NY
              September 3, 2021

                                                            JULIE H. CARTER
                                                            PLAINTIFF

Sworn to before me this 3rd
day of September, 2021.

Notary Public

STEPHANIE A. ADAMS
Notary Public, State of New York
Qualified in Erie County
Reg. No. 02AD6061216
Commission Expires July 16, 20 21

PLAINTIFF VERIFICATION

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF ERIE   )

## **VERIFICATION**

    HILARY LOCHTE, being duly sworn, deposes and says that she is a Plaintiff named in the within action; that she has read the foregoing Complaint and knows the contents thereof and that the same is true to the best of her knowledge, except as to the matters therein stated and to be alleged upon information and belief, and as to those matters she believes them to be true.

DATED:    Buffalo, NY
             September 3, 2021

                                          HILARY LOCHTE
                                          PLAINTIFF

Sworn to before me this 3
day of September, 2021.

Notary Public

STEPHANIE A. ADAMS
Notary Public, State of New York
Qualified in Erie County
Reg. No. 02AD6061216
Commission Expires July 16, 2022

PLAINTIFF VERIFICATION

STATE OF NEW YORK      )
                       ) SS:
COUNTY OF ERIE    )

## **VERIFICATION**

      JAMIE N. DEWATERS, being duly sworn, deposes and says that she is a Plaintiff named

in the within action; that she has read the foregoing Complaint and knows the contents thereof and

that the same is true to the best of her knowledge, except as to the matters therein stated and to be

alleged upon information and belief, and as to those matters she believes them to be true.


DATED:      Buffalo, NY
              September 3 , 2021

                                                JAMIE N. DEWATERS
                                              PLAINTIFF


Sworn to before me this 3
day of September, 2021.

_____
Notary Public

STEPHANIE A. ADAMS
Notary Public, State of New York
Qualified in Erie County
Reg. No. 02AD6061216
Commission Expires July 16, 2024

PLAINTIFF VERIFICATION

STATE OF NEW YORK    )
                       ) SS:
COUNTY OF ERIE   )

## **VERIFICATION**

     NANCY KACZMAREK, being duly sworn, deposes and says that she is a Plaintiff named

in the within action; that she has read the foregoing Complaint and knows the contents thereof and

that the same is true to the best of her knowledge, except as to the matters therein stated and to be

alleged upon information and belief, and as to those matters she believes them to be true.


DATED:      Buffalo, NY
              September _3_ , 2021


                                     _Nancy Kaczmarek_
                                     NANCY KACZMAREK
                                     PLAINTIFF


Sworn to before me this _3_
day of September, 2021.

_____
Notary Public

      STEPHANIE A. ADAMS
    Notary Public, State of New York
      Qualified in Erie County
      Reg. No. 02AD6061216
   Commission Expires July 16, 20_25_