UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DR. STEPHEN E. WILLIAMS,
DR. JAMES P. LALLEY,                                    REPORT
DR. HILARY A. LOCHTE,                                   and
DR. JAMIE N. DeWATERS,                          RECOMMENDATION
DR. NANCY KACZMAREK, and
DR. JULIE H. CARTER,                              21-CV-1001JLS(F)

                              Plaintiffs,

              v.

D'YOUVILLE COLLEGE,
JBCN EDUCATION, INC.,
CHALKBOARD SCHOOL SOLUTIONS, LLP,
NATIONS OF LEARNING EXCELLENCE, and
DOES 1-5,

                              Defendants.
_____


APPEARANCES:          LAW OFFICE OF STEPHANIE ADAMS, PLLC
                      Attorneys for Plaintiffs
                      STEPHANIE A. ADAMS, and
                      SALLIE GLAZIER RANDOLPH, of Counsel
                      363 Grant Street
                      Suite 1
                      Buffalo, New York  14213

                      BOND SCHOENECK & KING, PLLC
                      Attorneys for Defendants D'Youville College and
                       JBCN Education, Inc.
                      JAMES J. ROONEY,
                      PETER H. WILTENBURG, and
                      JEREMY P. OCZEK
                      Avant Building
                      200 Delaware Avenue
                      Suite 900
                      Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Hon. John L. Sinatra, Jr. on November 2, 2021, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendant D'Youville College's motion to dismiss (Dkt. 17), filed November 1, 2021.

## BACKGROUND

On September 6, 2021, Plaintiffs Dr. Stephen E. Williams, Dr. James P. Lalley, Dr. Hilary A. Lochte, Dr. Jamie N. DeWaters, Dr. Nancy Kaczmarek, and Dr. Julie H. Carter (together, "Plaintiffs"), commenced this action alleging violations of copyright law, New York Civil Rights Law §§ 50 and 51, the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), New York General Business Law § 349, unjust enrichment, and fraudulent inducement by Defendants D'Youville College ("the College"), JBCN Education, Inc. ("JBCN"), Chalkboard School Solutions, LLP ("Chalkboard"), Nation of Learning Excellence ("NLE"), and Does 1-5 ("Doe Defendant") (together, "Defendants").[1]  Plaintiffs' claims are premised on Defendants' alleged use, without Plaintiffs' permission, of a course of instruction, including a curriculum and materials for a Masters in Education degree the College could award in collaboration with unaccredited educational institutions, created, at Defendants' request in 2017, by Plaintiffs as faculty members of the College's now defunct Education Department.  Attached to the Complaint are exhibits A through P (Dkts. 1-1 through 1-16) ("Plaintiff's Exh(s). ___").

---

[1] The court notes the remaining Defendants have not been served, and Defendant JBCN, on September 26, 2022, moved without filing an answer, to dismiss for lack of personal jurisdiction based on Plaintiffs' failure to timely serve, and for failure to state a claim (Dkt. 33).

On November 1, 2021, Defendant College moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint for failure to state a claim (Dkt. 17) ("Defendant College's Motion"), attaching in support the Memorandum of Law in Support of D'Youville College's Motion to Dismiss (Dkt. 17-1) ("Defendant College's Memorandum").  On December 31, 2021, Plaintiffs filed the Memorandum of Law in Support of Plaintiffs' Opposition to D'Youville College's Motion to Dismiss (Dkt. 22) ("Plaintiffs' Response").  On January 28, 2022, Defendant College filed the Reply Memorandum of Law in Further Support of D'Youville College's Motion to Dismiss (Dkt. 25) ("Defendant College's Reply").  With leave of the court, February 28, 2022 Text Order (Dkt. 28), Plaintiffs filed on March 4, 2022 Plaintiffs' Sur Reply in Further Opposition to Defendant's Motion to Dismiss (Dkt. 29) ("Plaintiffs' Sur-Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant College's Motion should be GRANTED.

## FACTS[2]

Plaintiffs Dr. Stephen E. Williams ("Dr. Williams"), Dr. James P. Lalley ("Dr. Lalley"), Dr. Hilary A. Lochte ("Dr. Lochte"), Dr. Jamie N. DeWaters ("Dr. DeWaters"), Dr. Nancy Kaczmarek ("Sister Nancy"), and Dr. Julie H. Carter ("Dr. Carter") (together, "Plaintiffs"), were formerly employed as full-time faculty members in the now defunct Education Department of Defendant D'Youville College ("the College").  Plaintiffs maintain that in 2017, the College, faced with financial difficulties, decided to discontinue the Education Department and, thus, also terminate Plaintiffs' employment at the College, unless the Education Department generated more revenue.

---

[2] Taken from the Complaint and the attached exhibits.

Accordingly, Defendants College, JBCN Education, Inc. ("JBCN"), Chalkboard School

Solutions, LLP ("Chalkboard"), and Nation of Learning Excellence ("NLE") (together,

"Defendants"), requested Plaintiff develop the curriculum and materials ("coursework")

for a Masters in Education degree the College could award students in collaboration

with unaccredited institutions ("Partnership Masters").  Because Plaintiffs believed

creation of the Partnership Masters coursework would general additional revenue and

dissuade the College from eliminating the Education Department and its operations,

Plaintiffs commenced developing the coursework for the Partnership Masters in

November 2017, for which Plaintiffs received no additional compensation beyond their

regular teaching salaries.  Complaint ¶¶ 33-34.

In January 2018, the College, along with Defendants JBCN and Chalkboard, both

educational institutions based in Mumbai, India, announced their partnership, referred to

as Defendant Nation of Learning Excellence ("NLE") ("NLE Patnership"), through which

Defendants intended to offer a Professional Masters in Education.  Complaint ¶¶ 22-24,

39-41.  On January 23 and 24, 2018, Defendants Dr. Lochte and Dr. Carter were

required by the College, as part of the launch of the NLE Partnership, to attend the

NLE's "Mindfulness in Education" conference in Mumbai, India.  ¶ 42.

In September 2018, Plaintiffs completed the coursework, a detailed curriculum

for the Partnership Masters, with Plaintiffs' efforts resulting in a "joint work" bearing the

title "*A Professional Masters Degree in Education: A detailed guide from planning to

implementation*," (the "Subject Work").  Complaint ¶ 35.  On August 29, 2020, Plaintiffs

obtained a copyright registration number for the Subject Work, specifically, TXu 2-217-

371 ("copyright registration number"), and the copyright registration certificate[3] shows Plaintiffs own the Subject Work as joint authors.

On September 7, 2018, shortly after the NLE Partnership launched, the full-time faculty appointment of each of the six Plaintiffs was terminated after which Plaintiffs were no longer employees of the College.  Complaint ¶ 45.  All six Plaintiffs were offered, but refused to sign, a severance contract.  *Id*. ¶ 46.  Plaintiffs maintains the Subject Work contains the coursework materials Defendants continued to use after Plaintiffs' termination to register, teach, and promote the Professional Masters in Education.  *Id*. ¶ 40.

Until the termination of their employment on September 7, 2018, Plaintiffs, as full-time faculty members of the College, were represented by the D'Youville College Chapter of the American Association of University Professors ("AAUP" or "the Union").  AAUP and the College were parties to a "Cooperative Agreement" in effect from 2017 through 2021 (the "Union Contract").[4]  Article XX of the Union Contract concerns "Intellectual Property" and "sets forth the rights and obligations of the parties hereto as to intellectual property rights of the College and of the members of the bargaining unit."  Union Contract, Art. XX.A (Dkt. 1-8 at 73-75).  "Copyright/Copyrightable" is defined as "literary works," "musical works," "dramatic works," "pantomimes and choreographic works," "pictorials, graphic, and sculptural works," "motion picture and other audiovisual works," "sound recordings," "architectural works," and "computer programs."  *Id*., Art. XX.B.1 (Dkt. 1-8 at 73).  "Intellectual Property" is defined to include, as relevant here,

---

[3] A copy of the Subject Work's Certificate of Registration issued by the Copyright Office is filed as Complaint Exh. G (Dkt. 1-7).
[4] Complaint Exh. H (Dkt. 1-8).

"tests," "study guides," "syllabi," "test and work papers," "lectures," and "programmed instruction materials."  *Id.*, Art. XX.B.2 (Dkt. 1-8 at 73).  Pursuant to Art. XX.C.1, intellectual property created by a covered employee is the employee's sole and exclusive property, except as limited by Articles XX.C.2, 3, and 4.  *Id.*, Art. XX.C.1 (Dkt. 1-8 at 74).  As relevant, the College retains a permanent license in "syllabi" created by employees in the course of their duties.  In particular,

> Notwithstanding the foregoing, the College shall retain a permanent license to use for pedagogical purposes associated with teaching courses at the College, any and all syllabi created, made or originated by an employee in the course of his or her duties and responsibilities for the College. . . .  For the purposes of this Agreement, a syllabus includes the course description, the expected course, learning outcomes, course objectives, integrity policy, grading percentages, and list of suggested texts and materials.

Union Contract, Art. XX.C.2 (Dkt. 1-8 at 74).

Plaintiff maintains that "[e]xcept for a permanent license to use a 'syllabus' as defined in Article XX of the Union Contract for pedagogical purposes, any license under the Union Contract to use the Subject Work for marketing and offering course instruction was terminated when [the College][5] terminated the Plaintiffs," Complaint ¶ 65, but do not reference any part of the Union Contract in support of this assertion.  Plaintiffs further maintain that the Subject Work "contains the materials used [by Defendants] to register, teach, and promote the 'Professional Masters in Education,'" *id.* ¶ 40, and that Defendants are promoting "educational products and services that use the Subject Work for commercial purposes."  *Id.* ¶¶ 51-52.

In January 2019, Defendants first offered courses using the Subject Work during a semester when Plaintiffs were not employed.  The "NLE Partnership Brochure"[6] lists

---

[5] Unless otherwise indicated, bracketed material has been added.
[6] Complaint Exh. I (Dkt. 1-9).

courses to be delivered in connection with the Professional Masters in Education Program which Plaintiffs maintain includes coursework material authored and owned by Plaintiffs.  The NLE Partnership Brochure also includes images and biographies of Plaintiffs Dr. Lochte and Dr. Carter, implying Dr. Lochte and Dr. Carter are among the faculty of the College.  Plaintiffs contend that Defendants continued using "the names, likenesses, and academic reputations of the Plaintiffs to promote" their educational products."  Complaint ¶ 53.  As of August 25, 2021, Dr. Lochte remained incorrectly listed at the "School of Education Chair" for the College on JBCN's website.  *Id*. ¶ 54. The names and academic credentials of Plaintiffs Dr. DeWaters, Dr. Lalley, Dr. Lochte, Dr. Williams, and Sister Nancy were listed as "Full-time Undergraduate Faculty" in the College's 2021-2022 Undergraduate Catalogue published in 2021.[7]

## DISCUSSION

1.    **Motion to Dismiss**

Defendant College moves pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), to dismiss each of Plaintiffs' claim as insufficiently pleaded.  A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As such, the Supreme Court requires application of "a 'plausibility standard . . . .'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*,

---

[7] A screenshot of a relevant portion of the College's 2021-22 Undergraduate Catalog published on the College's internet website is set forth at Complaint ¶ 56.

556 U.S. 662, 678 (2009)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557)

A Rule 12(b)(6) motion is addressed to the face of the pleading.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  *See Yamashita v. Scholastic, Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (in addition to the factual allegations of a

complaint, the court may consider documents, such as exhibits attached to and relied upon in the complaint (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016)).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  Nevertheless, "[w]hen the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct,' the court must grant a motion to dismiss."  *Yamashita*, 936 F.3d at 104 (quoting *Iqbal*, 556 U.S. at 679).

## A.    First Claim – Direct Copyright Infringement

Plaintiffs' First Claim alleged direct copyright infringement based on Defendants' duplication, distribution, offering for sale, displaying, and preparing works derivative of the Subject Work without Plaintiffs' permission.  Complaint, First Claim.  Defendant College argues in support of dismiss that Plaintiffs failed to allege, as required, which specific original works are the subject of the copyright claim, as well as by what acts and during what time Defendants infringed the copyright.  Defendant College's Memorandum at 6-12.  In opposition to dismissal, Plaintiffs argue the Subject Work is the specific original work subject to the copyright claim, and a chart attached to the Complaint, Complaint Exh. M (Dkt. 1-13) ("Exhibit M Chart"), lists the courses alleged to

have used infringing materials as well as the sections of the Subject Work allegedly infringed.  Plaintiffs' Response at 6-9.  In further support of dismissal, Defendant College argues Plaintiffs fail to identify any specific infringing acts, asserting the Exhibit M Chart alleges the College offered certain courses both before and after Plaintiffs' termination, but does not allege that any identifiable portion of the Subject Work for which Defendant College did not have a license, as provided in Art. XX.C.2 of the Union Contract, was used in any particular post-termination course.  Defendant College's Reply at 1-3.  According to Defendants, without the required specificity of infringing acts, Plaintiffs' copyright infringement claim is merely speculative, which is insufficient to support such claim.  *Id*. at 3-4.  In their sur-reply, Plaintiffs maintain they "have sufficient reason to believe that Defendants offered materials that incorporate extensive portions of the Subject Work to subsequent instructors at D'Youville and its overseas partners," and that "it is reasonable to assume" Defendant College "provided *more* than the standard syllabi to the instructors it hired to replace the plaintiffs."  Plaintiffs' Sur-Reply at 2 (italics in original).

The Copyright Act of 1976 provides the author of an original work "the exclusive right to . . . reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).  To successfully bring an infringement claim a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Arista Records*, 604 F.3d at 117

(quoting *Feist Publ'n, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)) (internal quotation marks omitted).[8]

"'There is no heightened pleading requirement applied to copyright infringement claims . . . a claim of copyright infringement need only meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.'" *Gunther v. Town of Ogden*, 2019 WL 6130710, at * 3 (W.D.N.Y. Nov. 19, 2019) (quoting *Levine v. Landy*, 860 F. Supp. 2d 184, 191 (N.D.N.Y. 2012), and citing *McDonald v. K-2 Industries, Inc.*, 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015) ("In short, a copyright plaintiff need not plead detailed evidence, but she must allege facts — not just legal conclusions — demonstrating the existence of a facially plausible claim, *i.e.*, that she owns one or more valid copyrights that have been infringed by defendants)).  "To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broadcasting, Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'" *Id*. (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (internal quotation marks omitted)

---

[8] Although Plaintiffs did not register the subject copyright until August 29, 2020, the statute only requires a plaintiff have "a preregistration or registration of the copyright claim" prior to bringing a civil action in federal court.  17 U.S.C. § 411.  In the instant case, Defendant College does not dispute that Plaintiffs obtained a valid copyright registration prior to commencing this action and the fact that Plaintiffs assert Defendants engaged in infringing activity prior to the date of the copyright registration does not bar Plaintiffs' copyright infringement claims.  *See, c.f., Pickett v. Migos Touring, Inc.*, 420 F.Supp.3d 197, 205 (S.D.N.Y. 2019) ("a copyright infringement claim will be dismissed where the allegedly infringed work,  . . . was not registered at the time the original complaint was filed.").

(bracketed text in original)).  Accordingly, "[a] properly plead[ed] copyright infringement claim must allege [1] which specific original works are the subject of the copyright claim, [2] that [the] plaintiff owns the copyrights in those works, [3] that the copyrights have been registered in accordance with the statute, and [4] by what acts during what time the defendant infringed the copyright."  *Kelly v. L.L. Cool J., et al.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1993) (citations omitted) ("*Kelly*") ("the *Kelly* elements"), *aff'd*, 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994)).  In the instant case, Defendant College argues Plaintiff has failed to plead the first and fourth *Kelly* elements of a copyright infringement claim.  Defendants College's Memorandum at 6-12.

## 1.    First *Kelly* Element

With regard to the first *Kelly* element, Defendant College argues Plaintiffs provide no information about the Subject Work other than its title and copyright registration number, failing to attach a copy of the Subject Work to the Complaint or to provide any explanation for failing to do so, and instead only refer to the Subject Work as a "detailed curriculum."  Defendant College's Memorandum at 7.  According to Defendant College, the lack of detail regarding the Subject Work is fatal to Plaintiffs' copyright infringement claim insofar as district courts within the Second Circuit routinely dismiss such claims where the plaintiff failed to include or to otherwise adequately identify the work at issue. *Id*. (citing cases).  Nor do Plaintiffs allege what specific portions of the Subject Work Defendant College allegedly used without proper authorization.  *Id*. at 7-8.  Defendant College further maintains that because, pursuant to the Union Contract, it holds a license authorizing some copying of the copyrighted material, Plaintiffs are required to plead specific allegations of infringing outside the scope of Defendant College's license

to use the Subject Work.  *Id.* at 8-9.  In opposition, Plaintiffs argue that by citing to the title of the Subject Work, Plaintiffs have satisfied the first *Kelly* element.  Plaintiffs' Response at 8-9.  In further support of dismissal, Defendant College argues Plaintiffs have not identified what portions of the Subject Work Plaintiffs allege Defendant College infringed.  Defendant College's Reply at 1-2.

As Defendant College argues, Plaintiffs neither attach to the Complaint a copy of the Subject Work, nor describe with any particularity the contents of the Subject Work, especially the portions of the Subject Work to which Plaintiffs attach their copyright infringement claim.  As such, the court is unable to determine precisely what copyrighted works Plaintiffs maintain were infringed by Defendants as well as whether such allegedly infringing conduct involved portions of the Subject Work beyond the scope of Defendant College's license.  Moreover, Plaintiffs' asserted "reasonable belief," Plaintiffs' Sur-Reply at 2; Complaint ¶¶ 78-79, is insufficient to establish this first *Kelly* element.  *See Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) ("Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim." (citing cases)).  Plaintiffs thus have failed to sufficiently plead in satisfaction of the first *Kelly* element.

### 2.    **Fourth *Kelly* Element**

With respect to the fourth *Kelly* element, Defendant College argues Plaintiffs fail to allege with the requisite specificity "what the College actually did to infringe the copyright."  Defendant College's Memorandum at 9.  According to Defendant College, Plaintiffs, rather than make specific allegations about what portions of the Subject Work

Plaintiffs maintain were infringed by Defendants, "instead resort to vague, generalized, and repetitive allegations against all Defendants collectively that provide no information to the College about how and when it allegedly engaged in infringement." *Id*. In opposition, Plaintiffs argue copies of the alleged infringement incidents are listed in Complaint ¶¶ 47, 50, 58, 59, 60, and 61, as well as in the Exhibit M Chart. Plaintiffs' Response at 7-8. In further support of dismissal, Defendant College argues the Exhibit M Chart only details "that the College offered certain courses before Plaintiffs' termination and then again after their termination, but does not allege that any identifiable portion of the Subject Work was used in any particular post-termination course." Defendant College's Reply at 2-4.

"Subsumed within the fourth [*Kelly*] element—the infringing acts—is the issue of substantial similarity." *McDonald*, 108 F.Supp.3d at 139 (citing *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 63 (2d Cir.2010) ("[i]n order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's") (internal quotation marks omitted). Here, as with the first *Kelly* element, Plaintiffs, by failing either to attach a copy of the Subject Work to the Complaint or to describe with any particularity what portions of the Subject Work Defendants are alleged to have used without Plaintiffs' permission in violation of the copyright protection, have failed to sufficiently allege any asserted copying by Defendants was illegal based on a substantial similarity between the Defendants' work and the protectable elements of the Subject Work. Significantly, as stated, Facts,

*supra*, at 6, Art. XX of the Union Contract grants Defendant College a permanent license in, *inter alia*, syllabi developed by Union members, including Plaintiffs who were College employees when they developed the Subject Work.

Contrary to Plaintiffs' assertion, Plaintiffs' Response at 7, the Exhibit M Chart does not provide the requisite specificity for the fourth *Kelly* element; rather, the Exhibit M Chart is a table comprised of six columns containing (1) a list of courses allegedly taught both before and after Plaintiffs' termination; (2) a "link to publicly accessible content that indicates proprietary materials may have been used after termination," with each link the same for each listed course and, according to Defendant College, currently inactive; (3) the name of which faculty member taught the course listed in the first column; (4) "materials generated by terminated faculty member for listed course" described as, *e.g.*, "syllabus, objective, elaborations on assignments, rubrics for all assignments"; (5) "relevant materials for assessing violation of [Union Contract] Article XX"; and (6) "relevant information to confirm."   Save for the headings, both columns 5 and 6 are blank and completely devoid of any data or descriptive content.  Accordingly, the Exhibit M Chart does not advance Plaintiffs' argument in opposing dismissal.  *See Yamashita*, 936 F.3d at 105 (finding spreadsheet listing 82 copyrighted photographs the plaintiff claimed the defendant infringed by making copies of the photographs that exceeded the applicable license was insufficient to satisfy the fourth element where the columns for "publication" and "license limits" were devoid of data).

Nor do the paragraphs of the Complaint Plaintiffs reference, including ¶¶ 47, 50, 58, 59, 60, and 61, satisfy the fourth *Kelly* element.  Rather, a plain reading of such paragraphs establishes they contain only vague and conclusory assertions that

Defendants infringed the Subject Work by using unspecified portions of it after Plaintiffs were no longer employed by Defendant College.  *See*, *e.g.*, *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276, at * 3 (S.D.N.Y. Feb. 27, 2013) (dismissing pursuant to Rule 12(b)(6) copyright infringement claims where the plaintiff failed to properly allege the infringing acts and the complaint, instead, contained "several broad assertions" that the defendant used the plaintiff's copyrighted works "without permission"); *Richard Feiner and Co., Inc. v. Larry Harmon Pictures Corp.*, 38 F.Supp.2d 276, 279 (S.D.N.Y. 1999) (a complaint alleging copyright infringement must contain some factual allegations narrowing the infringing acts beyond broad conclusory statements of infringement).

Accordingly, Defendant College's Motion should be GRANTED with regard to the First Claim for which Plaintiffs fail to sufficiently plead the first and fourth *Kelly* elements.

### B.    Secondary Liability for Infringement

In their Second and Third Claims, Plaintiff seek to recover for, respectively, contributory and vicarious copyright infringement.  Complaint, Second and Third Claims. Defendant College argues that insofar as the Second and Third Claims allege Defendant College is liable for the infringing actions of the other Defendants, including JBCN, Chalkboard, and NLE, such claim fails in the absence of a properly pleaded claim for primary copyright infringement.  Defendant College's Memorandum at 12.  In opposition, Plaintiffs deny they failed to plead a claim for direct copyright infringement and, thus, are not barred from pleading an infringement claim based on secondary liability.  Plaintiff's Response at 9.

"Secondary liability for copyright infringement may be imposed on a party that has not directly infringed a copyright, but has played a significant role in direct infringement committed by others, for example by providing direct infringers with a product that enables infringement." *Arista Records LLC v. Lime Group LLC*, 784 F.Supp.2d 398, 422 (S.D.N.Y. 2011) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,* 545 U.S.913, 929-30 (2005); and *Sony Corp. v. Universal City Studios,* 464 U.S. 417, 434-35 (1984)). "The rationale for secondary liability is that a party who distributes infringement-enabling products or services may facilitate direct infringement on a massive scale, making it 'impossible to enforce [copyright protection] effectively against all direct infringers.'" *Id*. (quoting *Grokster*, 545 U.S. at 930). "In such circumstances, 'the only practical alternative is to go against the distributor of the copying device for secondary liability.'" *Id.* (quoting *Grokster*, 545 U.S. at 930)). Nevertheless, as Defendant College argues, Defendant College's Memorandum at 12-13, "[t]o recover on a claim based on secondary liability, a plaintiff must first establish direct [copyright] infringement by the relevant third party, *i.e.*, the party that received the infringement-enabling device." *Arista Records LLC*, 784 F.Supp.2d at 423. "Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citing *Grokster Ltd.*, 545 U.S. at 930, and *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 40 (2d Cir. 2005)).

    In the instant case, assuming the District Judge agrees with the undersigned's recommendation that Defendant College's Motion should be granted with regard to the First Claim for direct copyright infringement, then Defendant College's Motion should

likewise be GRANTED as to the Second and Third Claims asserting secondary liability for infringement.  Alternatively, because the instant motion is before the undersigned for a report and recommendation, the court addresses whether the Complaint sufficiently alleges claims for contributory copyright infringement (Second Claim) or for vicarious copyright infringement (Third Claim).

### 1.    Second Claim – Contributory Copyright Infringement

Defendant College argues Plaintiffs fail to allege a claim for contributory copyright infringement which requires alleging "the defendant, 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'"  Defendant College's Memorandum at 13 (quoting *Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 WL 296561, at * 2 (S.D.N.Y. Feb. 11, 2003) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971))).  According to Defendant College, Plaintiffs' failure to allege Defendant College provided the Subject Work to any of the remaining Defendants, as well as the requisite knowledge and "substantial partnership" with such Defendants, is fatal to this claim.  *Id*. at 13-14.  In opposition, Plaintiffs argue Complaint ¶ 82 includes the necessary elements of "encouragement" and "inducement" for a contributory infringement claim.  Plaintiff's Response at 9-10.  In reply, Defendant College maintains such vague assertion is insufficient to plead contributory copyright infringement.  Defendant College's Reply at 4-5.

"A person 'infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'"  *Spinelli*, 903 F.3d at 197 (citing *Grokster,*

*Ltd.*, 545 U.S. at 930).  Further, to state a claim for contributory infringement, the "plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement . . . . "  Merely providing the means or opportunity to engage in wrongful conduct is not sufficient to state a claim for contributory infringement. *Brought to Life Music, Inc.*, 2003 WL 296561, at * 2 (means); *Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at * 37 (S.D.N.Y. Dec. 7, 1998) (opportunity).

In the instant case, the Complaint fails to allege that Defendant College "intentionally induced" or "encouraged direct infringement" by any of the other Defendants.  Accordingly, Defendant College's Motion should be GRANTED as to the Second Claim.

### 2.    Third Claim – Vicarious Copyright Infringement

Defendant College argues with regard to the Third Claim alleging vicarious copyright infringement that Plaintiffs fail to allege Defendant College controlled the conduct of any of the direct infringers as required.  Defendant College's Memorandum at 14-15.  In opposition, Plaintiffs argue they adequately pleaded Defendant College had the ability to supervise the other Defendants, yet failed to do so.  Plaintiffs' Response at 10-12 (quoting Complaint ¶ 89).  Defendant College argues in further support of dismissal that a single conclusory statement that each Defendant "had the right and ability to supervise and control the activity of their partners, with respect to the content of the subject work," is not the equivalent of stating a claim for vicarious copyright infringement.  Defendant College's Reply at 5.

Liability for "[v]icarious infringement requires that defendant possess the right and ability to supervise the infringing conduct."  *Matthew Bender & Co., Inc. v. West*

*Pub. Co.*, 158 F.3d 693, 707 n. 22 (2d Cir. 1998) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)).  "Threadbare recitals" of the elements of vicarious copyright infringement are insufficient.  *See Klauber Brothers, Inc. v. URBN US Retail LLC*, 2022 WL 1539905, at ** 10-11 (S.D.N.Y. May 14, 2022) (dismissing for failure to state a claim plaintiff's "thin allegations" of contributory negligence that were "mere boilerplate" in alleging the defendant "had direct oversight or involvement" in the asserted infringing activity).

In the instant case, Plaintiff's bare allegation, without sufficiently alleging the basis for asserting, that Defendant College had the ability to supervise the other Defendants fails to sufficiently allege a claim for vicarious copyright infringement. Defendant College's Motion should be GRANTED as to the Third Claim.

### C.    Fourth Claim – New York Civil Rights Law §§ 50 and 51

Plaintiff's Fourth Claim asserts violations of New York Civil Rights Law § 50 ("§ 50"), and § 51 ("§ 51").  Complaint, Fourth Claim.  In particular, § 51 authorizes a civil action for injunctive relief and damages for a violation of § 50 pertaining to a person's right to privacy.  As relevant here, § 50 prohibits the use "for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ."  N.Y. Civ. Rights Law § 50. Plaintiff maintain Defendants violated §§ 50 and 51 on four occasions including (1) March 1, 2018 when an article on Defendant College's website announced the "collaboration" between the College, JBCN, and Chalkboard, Complaint ¶ 42; (2) the publication of the "NLE Partnership Brochure" containing the names and photographic images of Plaintiffs Dr. Lochte and Dr. Carter, Complaint ¶ 43; (3) uploading to the

College's YouTube channel on May 7, 2018 a video titled "D'Youville – JBCN

Chalkboard Partnership," Complaint ¶ 44; and (4) including Plaintiffs' names in the

College's 2021-22 Undergraduate Catalog, which is available on the College's website,

Complaint ¶¶ 55-56.  In support of dismissal, Defendant College maintains three of the

four asserted "uses" are time-barred, Defendant College's Memorandum at 17, and the

fourth use, *i.e.*, inclusion of Plaintiffs' names in the College's 2021-22 Undergraduate

Catalog, was not for commercial use, as required, *id*. at 17-18, but was merely an

incidental use.  *Id*. at 18-19.  In opposition, Plaintiffs do not dispute that all incidents but

the inclusion of Plaintiffs' names in the 2021-22 Undergraduate Catalog are time-barred,

yet maintain Defendant College's inclusion of Plaintiffs' names in the 2021-22

Undergraduate Catalog was for commercial purposes as the listing of faculty in a

college publication could entice prospective students to attend a particular institution of

higher education.  Plaintiffs' Response at 12-14.  In further support of dismissal,

Defendant College maintains Plaintiffs fail to allege how the College's 2021-22

Undergraduate Catalog, which is intended as a resource only for existing students in

choosing courses to take, could be anything other than incidental, and much less than a

commercial use.  Defendant College's Reply at 5-6.

  "To establish liability under Section 51, a plaintiff "'must demonstrate each of four

elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of

New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written

consent.'"  *Electra v. 59 Murray Enterprises, Inc*., 987 F.3d 233, 249 (2d Cir. 2021)

(quoting *Molina v. Phx. Sound Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002)).  "'A name,

portrait or picture is used 'for advertising purposes' if it appears in a publication which,

taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service,'" *id*. (quoting *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 278 (N.Y. 1991)), and is used for purposes of trade if it 'involves use which would draw trade to the firm.'" *Id*. (quoting *Kane v. Orange Cty. Publ'ns.*, 649 N.Y.S.2d 23, 25 (2d Dep't 1996)). "Because the statute was 'drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more,'" *id*. (quoting *Finger v. Omni Publ'ns. Int'l, Ltd.*, 566 N.E.2d 141, 141 (N.Y. 1990) (internal quotation marks and citation omitted)), "the statute's terms are 'to be narrowly construed and strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person.'" *Id*. (quoting *Messenger v. Gruner Jahn Printing and Pub.*, 208 F.3d 122, 125 (2d Cir. 2000)). Stated another way, to satisfy the advertising prong of § 50, the use of Plaintiffs' names must have been intended "primarily to solicit funds . . . ." *Davis v. Stratton*, 575 FSupp.2d 410, 423 (N.D.N.Y. 2008), *rev'd on other grounds*, 360 Fed.Appx. 182 (2d Cir. 2010).

In the instant case, the inclusion of Plaintiffs' names in the College's 2021-22 Undergraduate Catalog, which was intended as a resource for existing college students, does not meet the criteria for liability under §§ 50 and 51. The only caselaw found by the court even remotely on point is *Beck v. Manhattan College*, 537 F.Supp.3d 584 (S.D.N.Y. 2021) where a college student sued the college in which she enrolled alleging that when the college, upon the onset of the COVID-19 pandemic in the spring of 2020, moved to on-line classes and suspended or vastly reduced access to on-campus activities and services, the college breached a contractual obligation to provide enrolled

students with in-person instruction and access to on-campus activities, services, and facilities in exchange for tuition and fees. *Beck*, 537 F.Supp.3d at 586-87. In opposing the defendant college's motion to dismiss for failure to state a breach of contract claim, the plaintiff relied on the college's website and catalog of courses depicting campus life. *Id*. at 587-88. In dismissing the breach of contract claim, the court found the website excerpts did not promise students on-campus residence or to hold in-person classes, but merely advertised and described the general experience of studying and living on the college's campus. *Id*.

Similarly, in the instant case, fairly read, the inclusion of Plaintiffs' names in the College's 2021-22 Undergraduate Catalog which was also published on Defendant College's internet website, Complaint ¶ 56, was not intended to guarantee Plaintiffs would be available to teach any classes to prospective students. Moreover, Plaintiffs do not allege the inclusion of their names in the catalog was intended "primarily to solicit funds . . . ." *Davis*, 575 FSupp.2d at 423. Accordingly, Defendant College's Motion should be GRANTED as to the Fourth Claim.

### D.    Fifth Claim – False Designation of Origin

Plaintiffs' Fifth Claim asserts a claim for false designation of origin in violation of 15 U.S.C. § 1125(a)(1) based on Defendants' alleged use in commerce of Plaintiffs' names and credentials that is false and misleading as to the origin of the offered service, *i.e.*, the Partnership Masters and the Professional Masters Degree in Education. Complaint, Fifth Claim. Defendant College argues in support of dismissal of this claim, which arises under the Lanham Act, that Plaintiffs are not within the class of persons protected by the Lanham Act which is intended to protect "only 'the producer of

tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods.'"  Defendant College's Memorandum at 19 (quoting *Clark v. Childs*, 416 F.Supp.3d 221, 224 (E.D.N.Y. 2017)).  In opposition, Plaintiffs argue their Lanham Act claim is sufficiently alleged because "Defendants are marketing the Partnership Masters and offering academic courses as if they are overseen, taught, and/or conducted by or with the participation of the Plaintiffs.  Such marketing is completely false and damaging to the Plaintiffs."  Plaintiffs' Response at 14-17.  In further support of dismissal, Defendant College reiterates that because Plaintiffs do not assert to be producers of tangible goods, the Lanham Act does not apply.  Defendant College's Reply at 7.

The Supreme Court has held that the phrase "origin of goods" as used in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 (2003).  "The Lanham Act 'cannot be invoked as an end run around the copyright laws or to add another layer of protection to copyright holders.'" *Vargas v. Viacom International, Inc.*, 2018 WL 6920769, at *8 (S.D.N.Y. Nov. 30, 2018) (quoting *Agence France Presse v. Morel*, 769 F.Supp.2d 295, 307 (S.D.N.Y. 2011)).  According to the Supreme Court, a "communicative product" is "one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or . . . a video." *Dastar Corp.*, 539 US. at 33.   Further, "according special treatment to communicative products" would cause "the Lanham Act to conflict with the law of copyright, which addresses that subject specifically." *Id*.

Because Plaintiffs do not allege they are producers of tangible goods rather than "communicative products," they cannot state a claim for a Lanham Act violation. As such, Defendant College's Motion should be GRANTED as to the Fifth Claim.

### E.    Sixth Claim – New York General Business Law § 349(a)

Plaintiffs' Sixth Claim alleges that by portraying Plaintiffs as associated with the delivery of educational services which Plaintiff do not deliver, Defendants engaged in deceptive acts and practices in the conduct of their business in violation of New York General Business Law § 349(a) (" § 349(a)"), entitling Plaintiffs to an order enjoining such further deceptive use of Plaintiff's names, images and credentials. Complaint, Sixth Claim. In support of their motion to dismiss, Defendant College argues that because Plaintiffs fail to allege any injury to Plaintiffs caused by the asserted deceptive practices, Plaintiffs cannot recover under § 349(a) which does not provide for redress of injuries to others, *i.e.*, Defendants' deceived customers. Defendant College's Memorandum at 20-21. In opposition, Plaintiffs argue they suffered a so-called "diversion of trade" injury, specifically, an injury for the lost commercial opportunity by claiming a negative impact on Plaintiffs' business. Plaintiffs' Response at 17-18 (citing *Casper Sleep, Inc. v. Mitcham*, 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) ("*Casper Sleep*")). In further support of dismissal, Defendant College differentiates the facts of the instant case from *Casper Sleep*, explaining *Casper Sleep* involved direct competitors - mattress retailers - with the court stating, *in dicta*, that the plaintiff mattress retailer alleged a cognizable injury insofar as the deceived customer-purchasers were dissuaded by the defendant mattress retailer's alleged deceptive business practices

from buying a mattress from the plaintiff.  Defendant College's Reply at 7-8 (citing *Casper Sleep*, 2016 WL 7188788, at *2 & n. 2).

"To successfully assert a claim under § 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Casper Sleep*, 2016 WL 7188788, at *1 (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009)).   Where, as here, the plaintiff is not a business and does not sell anything, the plaintiff cannot allege a diversion of trade injury.  *Voters for Animal Rights v. D'Artagnan*, 2020 WL 9209257, at *7 (E.D.N.Y. July 15, 2020) ("*VFAR*").  Similar to the instant case, the plaintiffs in *VFAR* asserted a claim pursuant to § 349(a) alleging a diversion of trade injury based on deceptive business practices by the defendant.  *Id*. at *1.  In particular, the plaintiff, a non-profit organization engaged in lobbying for and promoting animal rights, sued the defendant, a manufacturer and purveyor of gourmet foods, including foie gras, alleging the defendant's marketing and promotion of itself as engaging in only humane treatment of animals in the course of the production of foie gras and other products caused injury to the plaintiff who was forced to expend considerable resources educating the public about the truth of defendant's actions, including, *inter alia*, the inhumane treatment of animals.  *Id*. at ** 1-2.  The court dismissed the plaintiff's § 349(a) claim explaining that because the plaintiff was not in the business of selling anything, the plaintiff could not assert a diversion of trade claim.  *Id*. at *7.

Accordingly, because Plaintiffs do not allege they are in the business of selling anything, Plaintiffs cannot allege a § 349(a) claim based on a diversion of trade theory. Defendant College's Motion should be GRANTED as to the Sixth Claim

### F.    Seventh Claim – Unjust Enrichment

In their Seventh Claim, Plaintiffs allege Defendants directed Plaintiffs to generate certain coursework materials, without additional pay, then terminated the employment of each Plaintiff, yet continue to use the materials generated by Plaintiffs without Plaintiffs' authorization.  Complaint, Seventh Claim.  In support of dismissal of this claim, Defendant College argues Plaintiffs' unjust enrichment claim is preempted by the Copyright Act, 17 U.S.C. §§ 102 and 103.  Defendant College's Memorandum at 21-22. In opposing Defendant College's Motion, Plaintiffs argue their unjust enrichment claim is not preempted by the Copyright Act because it was pleaded as an alternative should Plaintiffs' copyright claims be successfully challenged by Defendants.  Plaintiffs' Response at 18.  In further support of dismissal, Defendant College argues that regardless of whether Plaintiffs' copyright claims are dismissed, Plaintiff's unjust enrichment claim is subject to dismissal because it arises from the same theory as Plaintiffs' copyright infringement claims.  Defendant College's Reply at 8-9,

As recognized by the Second Circuit, "Congress carefully designed the statutory framework of federal copyright preemption."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992).  Toward that end, to insure that the enforcement of these rights remains solely within the federal domain, § 301(a) of the Copyright Act ("§ 301__") expressly preempts

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship

that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . .

17 U.S.C. § 301(a).

This preemption of state law is, however, limited by § 301(b), which provides, in relevant part, that

[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . .

17 U.S.C. § 301(b)(3).

In turn, § 106 of the Copyright Act, "affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly." *Computer Assocs. Int'l, Inc.*, 982 F.2d at 716 (citing 17 U.S.C. § 106(1)–(5)).

Section 301 thus preempts only those state law rights that "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights" provided by federal copyright law. *See Harper & Row, Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539 (1985). Nevertheless, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action,' then the right does not lie 'within the general scope of copyright,' and there is no preemption." *Computer Assocs. Int'l, Inc.*, 982 F.2d at 716 (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B], at 1-14-15 (1991), and citing *Harper & Row, Publishers, Inc.,* 723 F.2d at 200 (where state law right "is predicated

28

upon an act incorporating elements beyond mere reproduction or the like, the [federal and state] rights are not equivalent" and there is no preemption)). Importantly, "[a] state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Id.* (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985), and citing *Harper & Row, Publishers, Inc.,* 723 F.2d at 201). "To determine whether a claim meets this standard, we must determine 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Id.*, 982 F.2d at 716-17 (quoting 1 Roger M. Milgrim, *Milgrim on Trade Secrets* § 2.06A[3], at 2–150 (1992)). In other words, "'[a]n action will not be saved from preemption by elements such as awareness or intent, which alter "the action's scope but not its nature. . . .'" *Id.* (quoting *Mayer,* 601 F.Supp. at 1535).

In the instant case, Plaintiff fails to point to any theory of liability supporting their unjust enrichment claim that is separate from the theory of liability supporting their copyright infringement claims that Defendants infringed Plaintiffs' copyright in the Subject Work. Accordingly, Plaintiffs fail to state a claim for unjust enrichment, and Defendant College's Motion should be GRANTED as to Plaintiffs' Seventh Claim.

### G.    Eighth Claim – Fraudulent Inducement

Plaintiffs Eighth Claim alleges fraudulent inducement based on Defendants' allegedly deceiving Plaintiffs into believing that by successfully developing the coursework, Plaintiffs would become the leaders and teachers of the coursework and prevent the elimination of their jobs on the faculty at the College. Complaint, Eighth Claim. In support of dismissal of this claim, Defendant College argues the claim is

preempted by the copyright claims which seeks redress for the same injury, *i.e.*, lack of credit or pay for working on the coursework materials, requiring dismissal of the claim. Defendant College's Memorandum at 23.  Defendant College further argues Plaintiffs fail to plead this fraud claim with the specificity required by Fed.R.Civ.P. 9(b) ("Rule 9(b)").  *Id*. at 23-24.  In opposition to dismissal, Plaintiffs admit their fraudulent inducement claim is pleaded only in the alternative should their copyright infringement claims be dismissed, Plaintiffs' Response at 18-19, and assert Plaintiffs have alleged all the elements for fraud in accordance with Rule 9(b).  *Id*. at 19-20.  In further support of dismissal, Defendant College argues Plaintiff's fraudulent inducement claim is within the same subject matter as Plaintiffs' copyright infringement claims and, as such, is preempted, Defendant College's Reply at 9, and Plaintiffs fail to identify any specific allegations in the Complaint satisfying Rule 9(b)'s requirements for a fraud claim.  *Id*.

As Defendant College argues, "[a] state cause of action is preempted by federal copyright law if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-laws right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. Associated Press*, 3 F.3d 656, 665-66 (2d Cir. 1993) (holding that New York law awards only out-of-pocket expenses in fraud cases, entitling plaintiff to damages solely for actual pecuniary losses, such that losses must be direct, immediate, and proximate result of fraud, and damages *must be independent of other causes including copyright*).  As with Plaintiffs' Seventh Claim, nothing in the Complaint alleges that any damages Plaintiffs could recover would be independent of Plaintiffs' copyright claims, such that Plaintiffs' fraudulent inducement claim is preempted.

Moreover, under New York law, a claim for fraud requires a plaintiff "'show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Bridgestone/ Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995)).  "Moreover, these allegations must be stated 'with particularity,' Fed.R.Civ.P. 9(b), requiring a plaintiff to 'specify the time, place, speaker, and content of the alleged misrepresentations,' as well as 'how the misrepresentations were fraudulent' and 'those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (quoting *Caputo v. Pfizer, Inc*., 267 F.3d 181, 191 (2d Cir. 2001)).

Significantly, the instant Complaint is completely bereft of any allegations satisfying Rule 9(b)'s specificity requirements.  Accordingly, Defendant College's Motion should be GRANTED as to Plaintiffs' Eighth Claim.

## 2.    Leave to Replead

Plaintiffs alternatively argue that should any of their claims be found legally insufficient to state a claim, Plaintiffs should be permitted to replead the claims. Plaintiffs' Response at 21.  In opposition to this request, Defendant College argues that leave to replead should be denied because a liberal reading of the Complaint fails to indicate that a valid claim may be stated.  Defendant College's Reply at 10.

Generally, a motion to dismiss under Rule 12(b)(6) for failure to state a claim is without prejudice and with leave to file an amended complaint curing the deficiencies of the dismissed original complaint.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1992) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Where, however, the plaintiff's pleadings' deficiencies are substantive such that better pleading will not cure them as, for example, with regard to lack of subject matter jurisdiction or time-barred claims, leave to replead would be futile, thus warranting dismissal without the opportunity to amend.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (where leave to replead would be futile dismissal may be with prejudice and without leave to file an amended complaint).

Here, nothing in the record suggests the deficiencies with the Complaint are substantive such that Plaintiffs cannot overcome the deficiencies, particularly with regard to the First, Second, Third, and Fourth Claims.  As such, Plaintiffs should be granted leave to file an amended complaint addressing the deficiencies in the First, Second, Third, and Fourth Claims as delineated in this Report and Recommendation. In contrast, the problems with Plaintiffs' Fifth and Sixth Claims are substantive – as Plaintiffs cannot plead around the fact they are not producers of tangible good and are not in the business of selling anything – and are not likely to be overcome by subsequent pleading, and Plaintiffs fail to suggest any alternative basis supporting their preempted Seventh and Eighth Claims.  Accordingly, dismissal of the Fifth, Sixth, Seventh, and Eighth Claims should be with prejudice and without leave to replead.

**CONCLUSION**

Based on the foregoing, Defendant College's Motion (Dkt. 17), should be GRANTED; Plaintiffs' First, Second, Third and Fourth Claims should be DISMISSED for failure to state a claim with leave to replead, and Plaintiffs' Fifth, Sixth, Seventh, and Eighth Claims should be DISMISSED for failure to state a claim and without leave to replead.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 29th, 2022
           Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        September 29th, 2022
             Buffalo, New York