UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DR. STEPHEN E. WILLIAMS,
DR. JAMES P. LALLEY,                                           REPORT
DR. HILARY A. LOCHTE,                                           and
DR. JAMIE N. DeWATERS,                                    RECOMMENDATION
DR. NANCY KACZMAREK, and
DR. JULIE H. CARTER,                                       21-CV-1001-JLS-LGF

                              Plaintiffs,

                    v.

D'YOUVILLE COLLEGE,
JBCN EDUCATION, INC.,
CHALKBOARD SCHOOL SOLUTIONS, LLP,
NATIONS OF LEARNING EXCELLENCE, and
DOES 1-5,

                              Defendants.
_____


APPEARANCES:            LAW OFFICE OF STEPHANIE ADAMS, PLLC
                        Attorneys for Plaintiffs
                        STEPHANIE A. ADAMS,
                        SALLIE GLAZIER RANDOLPH, and
                        BENJAMIN LANKENAU SACHS, of Counsel
                        363 Grant Street
                        Suite 1
                        Buffalo, New York  14213

                        BOND SCHOENECK & KING, PLLC
                        Attorneys for Defendants D'Youville College and
                          JBCN Education, Inc.
                        JAMES J. ROONEY,
                        PETER H. WILTENBURG, and
                        JEREMY P. OCZEK
                        Avant Building
                        200 Delaware Avenue
                        Suite 900
                        Buffalo, New York  14202

## JURISDICTION

In his Decision and Order filed January 27, 2023 (Dkt. 36), which granted
Defendant D'Youville College's motion to dismiss for failure to state a claim, which leave
to file an amended complaint repleading the First, Second, Third and Fourth Claims,
District Judge John L. Sinatra, Jr. referred this case back to the undersigned for further
proceedings consistent with the referral order entered on November 2, 2021 (Dkt. 18),
*i.e.*, for all pretrial matters including preparation of a report and recommendation on
dispositive motions.  The matter is presently before the court on motions filed May 26,
2023 by Defendant D'Youville College to dismiss the amended complaint (Dkt. 49), and
by Defendant JBCN Education, Inc. to dismiss for lack of jurisdiction (Dkt. 50).

## BACKGROUND

On September 6, 2021, Plaintiffs Dr. Stephen E. Williams, Dr. James P. Lalley,
Dr. Hilary A. Lochte, Dr. Jamie N. DeWaters, Dr. Nancy Kaczmarek, and Dr. Julie H.
Carter (together, "Plaintiffs"), commenced this action alleging eight claims for relief
including violations of federal copyright law, New York Civil Rights Law §§ 50 and 51,
the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), New York General Business Law § 349,
unjust enrichment, and fraudulent inducement by Defendants D'Youville College ("the
College" or "D'Youville"), JBCN Education, Inc. ("JBCN"), Chalkboard School Solutions,
LLP ("Chalkboard"), Nation of Learning Excellence ("NLE"), and Does 1-5 ("Doe
Defendants") (together, "Defendants").  Plaintiffs' claims are premised on Defendants'
alleged use, without Plaintiffs' permission, of a course of instruction, including a
curriculum and education materials for a Masters in Education degree ("Masters

Degree") the College could award in collaboration with unaccredited educational institutions, created, at Defendants' request in 2017, by Plaintiffs as faculty members of the College's since reconstituted Education Department. Attached to the Complaint are exhibits A through P (Dkts. 1-1 through 1-16) ("Plaintiff's Exh(s). __").[1]

On November 1, 2021, D'Youville moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint for failure to state a claim (Dkt. 17), which, in a Report and Recommendation filed September 29, 2022 (Dkt. 35) ("the R&R"), the undersigned recommended be granted. In a Decision and Order filed January 27, 2023 (Dkt. 36) ('the D&O"), District Judge Sinatra adopted the R&R, and all eight claims were dismissed for failure to state a claim, but Plaintiffs were granted leave to replead the First, Second, Third, and Fourth Claims. Accordingly, on March 28, 2023, Plaintiffs filed the First Amended Complaint (Dkt. 44) ("Amended Complaint"), in which Plaintiffs repleaded the first four claims alleged in the Complaint including (1) copyright infringement, Amended Complaint, First Claim; (2) contributory copyright infringement, *id*., Second Claim; (3) vicarious copyright infringement, *id*., Third Claim; and (4) violation of Plaintiffs' right to privacy under New York Civil Rights Law §§ 50 and 51, *id*., Fourth Claim.

On May 26, 2023, D'Youville filed a motion to dismiss the Amended Complaint for failure to state a claim (Dkt. 49) ("D'Youville's Motion"), attaching D'Youville College's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint (Dkt. 49-1) ("D'Youville's Memorandum"). Also filed on May 26, 2023, was JBCN's motion to dismiss the Amended Complaint for lack of jurisdiction (Dkt. 50)

---

[1] Neither Chalkboard nor NLE has been served or appeared in this action.

("JBCN's Motion"), attaching JBCN Education Private Ltd.'s[2] Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint (Dkt. 50-1) ("JBCN's Memorandum").

On August 18, 2023, Plaintiffs filed Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Amended Complaint (Dkt. 56) ("Plaintiffs' Response").  On November 13, 2023, D'Youville filed D'Youville College's Reply Memorandum of Law in Further Support of Its Motion to Dismiss the Amended Complaint (Dkt. 61) ("D'Youville's Reply").  No further papers in opposition to or in further support of JBCN's Motion have been filed.  Oral argument on D'Youville's Motion and JBCN's Motion (together, "pending motions"), was deemed unnecessary.

Based on the following, D'Youville's Motion should be DENIED in part and GRANTED in part; JBCN's Motion should be DENIED in part and GRANTED in part.

### FACTS[3]

Plaintiffs Dr. Stephen E. Williams ("Dr. Williams"), Dr. James P. Lalley ("Dr. Lalley"), Dr. Hilary A. Lochte ("Dr. Lochte"), Dr. Jamie N. DeWaters ("Dr. DeWaters"), Dr. Nancy Kaczmarek ("Sister Nancy"), and Dr. Julie H. Carter ("Dr. Carter") (together, "Plaintiffs"), were formerly employed as full-time faculty members in the Education Department of Defendant D'Youville College ("D'Youville" or "the College").  On September 7, 2018, each Plaintiff's employment at D'Youville was terminated.  Prior to the termination of Plaintiffs' employment, D'Youville, JBCN Education, Inc. ("JBCN"), and Chalkboard School Solutions, LLP ("Chalkboard"), formed a partnership in Buffalo,

---

[2] In its Notice of Motion, JBCN states it is "incorrectly sued here as 'JBCN Education, Inc.'"  Dkt. 50 at 1.
[3] Taken from the Complaint and the attached exhibits.

New York, Nation of Learning Excellence ("NLE") (together, "Defendants"), through which educational services were offered leading to a Masters Degree in education.

Plaintiffs are owners of a "joint work" bearing the title "A Professional Masters Degree in Education: A detailed guide from planning to implementation" (the "Subject Work").  Amended Complaint ¶ 15. and Exh. C (Dkt. 44-3).  On August 29, 2020, Plaintiffs obtained a copyright registration number for the Subject Work, specifically, TXu 2-217-371 ("copyright registration number"), and the copyright registration certificate[4] shows Plaintiffs own the Subject Work as joint authors.  In 2018, 2019, 2020, and 2021, Defendants, in connection with the academic program delineated in the Subject Work, shared with unidentified third parties portions of the "Subject Work to create derivative works, including adapted instructional materials" without Plaintiffs' permission, thereby infringing the copyright of the Subject Work.  In particular, Plaintiffs maintain Defendants "duplicated and adapted original materials created in the Subject Work, specifically, instructional materials for the course called 'EDU-622,'" Amended Complaint ¶ 24, as well as "duplicated, adapted, distributed, and published portions of the Subject Work . . . to offer and promote such courses then offered by D'Youville known as 'EDU 614', 'EDU 605', and 'EDU 622' in 2019 and beyond."  *Id*. ¶ 25. Plaintiffs further allege that in the spring, summer, and fall of 2019, after Plaintiffs' termination, D'Youville's website described courses to be offered in a "Professional Masters in Curriculum and Instruction" ("Professional Masters program"), that was to be taught by the College both at its Buffalo campus and in an on-line program through JBCN and Chalkboard to students located in India.  *Id*. ¶ 26.  D'Youville's website also

---

[4] A copy of the Subject Work's Certificate of Registration dated August 29, 2020, issued by the Copyright Office is filed as Amended Complaint Exh. B (Dkt. 44-2).

included links to material in the Subject Work that the College duplicated and published. *Id*. According to Plaintiffs, in 2019, representatives of D'Youville distributed portions of the Subject Work to boost its efforts to recruit adjunct faculty to teach courses, including EDU 613 and EDU 679, which Plaintiffs developed and previously taught. Plaintiffs further maintain that D'Youville and JBCN have previously used and continue to use, without permission, Plaintiffs' names and images in promotional materials "[t]o solicit funds in the form of tuition and registration," *i.e.*, Defendants' primary source of annual revenue. Plaintiffs' names and images have appeared on D'Youville's YouTube channel, and in the "2021-2022 D'Youville Undergraduate Catalog" in which Drs. DeWaters, Lalley, Lochte, and Williams, as well as Sister Nancy are listed as "Full-time Undergraduate Faculty." Amended Complaint ¶¶ 18-19.

## **DISCUSSION**

### 1.    **Failure to State a Claim**

Both D'Youville and JBCN move pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), to dismiss each of Plaintiffs' claims for failure to state a claim.[5] A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, the Supreme Court requires application of "a 'plausibility standard . . . .'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting

---

[5] As discussed below, Discussion, *infra*, at 33-46, JBCN also moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and 12(b)(5) for insufficient service of process.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  *Id.* (quoting *Twombly*, 550 U.S. at 557)

A Rule 12(b)(6) motion is addressed to the face of the pleading.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  *See Yamashita v. Scholastic, Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (in addition to the factual allegations of a

complaint, the court may consider documents, such as exhibits attached to and relied

upon in the complaint (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d

Cir. 2016)).  A court should consider the motion by "accepting all factual allegations as

true and drawing all reasonable inferences in favor of the [claimant]."  *Trustees of*

*Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a [claimant]'s obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(internal quotations and citations omitted).  Nevertheless, "[w]hen the well-pleaded facts

'do not permit the court to infer more than the mere possibility of misconduct,' the court

must grant a motion to dismiss."  *Yamashita*, 936 F.3d at 104 (quoting *Iqbal*, 556 U.S. at

679).

### A.    First Claim – Direct Copyright Infringement

Plaintiffs' First Claim alleges direct copyright infringement based on Defendants'

"sharing portions of the Subject Work with third parties, emailing it, duplicating it, and

using the Subject Work to create derivative works, including adapted instructional

materials," without Plaintiffs' permission.  Amended Complaint, First Claim ¶ 22.

According to Plaintiffs, Defendants duplicated portions of the Subject Work to enable

instructors other than Plaintiffs to teach courses both at D'Youville and on-line, and also

to promote D'Youville's course offerings and degree programs, *id.* ¶ 23, as well as to

recruit adjunct faculty to teach courses Plaintiffs developed and taught before being

terminated.  *Id.* ¶ 27.  Plaintiffs identify as an example of the alleged infringement a

document bearing the title "Syllabus for 19FA-EDU-622-A-Needs of Exceptional Learners," a class offered by D'Youville for the Fall 2019 semester. *Id*. ¶ 24 and Exh. D (Dkt. 44-4) ("the Instructional Material"). A portion of the Instructional Material is comprised of an assignment denominated "Field Observation Project" ("the project") which includes instructions and guidelines for the project. Instructional Material at D2-000731 – D2-000733 (Dkt. 44-4 at 6-8). Plaintiffs maintain the project text is copied from the Subject Work and thus constitutes copyright infringement ("the Infringing Text"). Plaintiffs provide a chart with a side-by-side comparison of the Infringing Text with the Subject Work. *Id*. Exh. E ("the Chart").

D'Youville argues in support of dismissal that Plaintiffs' only specific infringement allegation concerns a "syllabus" which is within the scope of a license retained by the College pursuant to a union contract. D'Youville's Memorandum at 10-12. D'Youville further argues Plaintiff have failed to identify any portion of the Subject Work Defendants allegedly improperly copied that was outside the license. *Id*. at 12-16. JBCN argues in support of dismissal of the First Claim that the Amended Complaint limits the claim to conduct by the College, JBCN's Memorandum at 14-15, and the remaining allegations fails to allege which portion of the Subject Work was copied, *id*. at 15, or any specific infringing activity by JBCN. *Id*. at 15-19. In opposition, Plaintiffs argue the Instructional Material was not a "syllabus" and reference a portion of the Subject Work that includes an assignment and guidelines for completing the assignment, content that is outside the license, Plaintiff's Response at 4-6, but even it was a syllabus, Defendants' use of the Subject Work exceeded the scope of D'Youville's license insofar as such syllabus was used to teach a course exclusively to

students in India, *id.* at 6-8, and the sole example on which Plaintiffs rely to demonstrate Defendants' infringement, *i.e.*, the project portion of the Instructional Material, is sufficient to sustain the Amended Complaint.  *Id.* at 8-9.  In further support of dismissal for failure to state a claim, D'Youville argues that the portions of the Subject Work on which Plaintiffs rely in support of their direct copyright infringement claim establishes the portions are part of a syllabus for which the College possesses a license to use, D'Youville's Reply at 2-5, especially given the allegedly Infringing Material was used for teaching courses either at D'Youville or on-line to students in India through the NLE program.  *Id.* at 6-7.

The Copyright Act of 1976 provides the author of an original work "the exclusive right to . . . reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106) ("the Copyright Act").  To successfully bring an infringement claim a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Arista Records*, 604 F.3d at 117 (quoting *Feist Publ'n, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)) (internal quotation marks omitted).[6]

---

[6] Although Plaintiffs did not register the subject copyright until August 29, 2020, the statute only requires a plaintiff have "a preregistration or registration of the copyright claim" prior to bringing a civil action in federal court.  17 U.S.C. § 411.  In the instant case, D'Youville does not dispute that Plaintiffs obtained a valid copyright registration prior to commencing this action and the fact that Plaintiffs assert Defendants engaged in infringing activity prior to the date of the copyright registration does not bar Plaintiffs' copyright infringement claims.  *See, c.f., Pickett v. Migos Touring, Inc.*, 420 F.Supp.3d 197, 205 (S.D.N.Y. 2019) ("a copyright infringement claim will be dismissed where the allegedly infringed work,  . . . was not registered at the time the original complaint was filed.").  Nor, at the pleading stage, have Defendants argued that the allegedly infringing material is not subject to copyright law, or that Defendants' use of such material is exempt from copyright law under the fair use doctrine, codified at 17 U.S.C. § 197.

"'There is no heightened pleading requirement applied to copyright infringement claims . . . a claim of copyright infringement need only meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.'"  *Gunther v. Town of Ogden*, 2019 WL 6130710, at * 3 (W.D.N.Y. Nov. 19, 2019) (quoting *Levine v. Landy*, 860 F. Supp. 2d 184, 191 (N.D.N.Y. 2012), and citing *McDonald v. K-2 Industries, Inc.*, 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015) ("In short, a copyright plaintiff need not plead detailed evidence, but she must allege facts — not just legal conclusions — demonstrating the existence of a facially plausible claim, *i.e.*, that she owns one or more valid copyrights that have been infringed by defendants")).  "To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Abdin v. CBS Broadcasting, Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'"  *Id.* (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (internal quotation marks omitted) (bracketed text and italics in original)).  Accordingly, "[a] properly plead[ed] copyright infringement claim must allege [1] which specific original works are the subject of the copyright claim, [2] that [the] plaintiff owns the copyrights in those works, [3] that the copyrights have been registered in accordance with the statute, and [4] by what acts during what time the defendant infringed the copyright."  *Kelly v. L.L. Cool J.*, 145 F.R.D.

32, 36 (S.D.N.Y. 1993) (citations omitted) ("*Kelly*") ("the *Kelly* elements"), *aff'd*, 23 F.3d

398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994)).

In the instant case, D'Youville initially does not argue Plaintiffs have failed to

plead any of the *Kelly* elements for a copyright infringement claim insofar as Plaintiffs

identify a portion of the Instructional Material for the "EDU-622" course as an example of

an infringed portion of the Subject Work.  D'Youville's Memorandum at 12-16.  JBCN,

however, alleges Plaintiffs have not sufficiently alleged the first and fourth Kelly

elements as against JBCN.  JBCN's Memorandum at 15-19.  The court first addresses

the materials Plaintiffs maintain Defendants infringed upon.

### 1.    Instructional Material

It is undisputed that while employed by D'Youville, Plaintiffs were represented by

the D'Youville College Chapter of the American Association of University Professors

("AAUP") and that D'Youville and AAUP were parties to "A Cooperative Agreement"

("the Union Contract")[7] in effect from 2017 through 2021.  Article XX of the Union

Contract pertains to "Intellectual Property" and "sets forth the rights and obligations of

the parties hereto as to intellectual property rights of the College and of the members of

the bargaining unit."  Union Contract, Art. XX.A (Dkt. 1-8 at 73-75).  "Copyright/

Copyrightable" is defined, in pertinent part, as "literary works," *id*., Art. XX.B.1 (Dkt. 108

at 73), and "Intellectual Property" is defined to include "tests," "study guides," "syllabi,"

"test and work papers," "lectures," and "programmed instruction materials."  *Id*., Art.

---

[7] Although not referenced nor attached as an exhibit to the Amended Complaint, Defendants' reliance on the Union Contract in support of their respective motions to dismiss is permitted because the Union Contract was attached as an exhibit to the original Complaint, *see* Dkt. 1-8, and is now part of a public record of which the court may take judicial notice on a motion to dismiss.  *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 463 n. 6 (2d Cir. 2006) (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2002) (stating the court may take judicial notice of court documents)).  Plaintiffs do not contest Defendants' reliance on the Union Contract.

XX.B.2 (Dkt. 1-8 at 73).  Further, intellectual property created by a covered employee is deemed the employee's sole and exclusive property, except as limited by Articles XX.C.2, 3, and 4.  *Id.*, Art. XX.C.1 (Dkt. 1-8 at 74).  D'Youville, however, retains a permanent license in "syllabi" created by employees in the course of their duties. Specifically,

> Notwithstanding the foregoing, the College shall retain a permanent license to use for pedagogical purposes associated with teaching courses at the College, any and all syllabi created, made or originated by an employee in the course of his or her duties and responsibilities for the College . . . .  For the purposes of the Agreement, a syllabus includes the course description, the expected course learning outcomes, course objectives, integrity policy, grading percentages, and list of suggested texts and materials.

Union Contract, Art. XX.C.2 (Dkt. 1-8 at 74) ("the Permanent License").

In moving to dismiss the First Claim for failure to state a claim, Defendants rely on this Permanent License in arguing the sample portion of the Subject Work copied by Defendants, identified by Plaintiffs in the Amended Complaint, Dkt. 44 ¶ 26 and Exhs. D and E, was taken from a syllabus within the Subject Work as is evident from the heading "Syllabus."  D'Youville's Memorandum at 3-5, 9-16; JBCN's Memorandum at 15 n. 7.[8]  According to D'Youville, the Instructional Material identified by Plaintiffs as infringing the Subject Work describes "a single assignment, including how long it should be, where students should gather information to write it, the form they must submit with it, and its required format," but "contains no substantive pedagogical content beyond this mere description of the assignment, and is therefore within any commonly understood meaning of 'syllabus,' including the non-exclusive descriptions of 'syllabus'

---

[8] JBCN's argument on this point is limited to asserting "the same reasons set forth in D'Youville's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint. . . ."  JBCN's Memorandum at 15 n. 7.

that are enumerated in the [Union Contract], such as 'course description,' 'expected course learning outcomes,' and 'course objectives.'"  *Id*. at 10-11.

In opposition, Plaintiffs argue the Infringing Text is not a syllabus but an "assignment" that "also includes tips on effectively completing the assignments and guidelines on proper observation of special needs students."  Plaintiff's Response at 5. Plaintiffs further maintain that at best, whether the Infringing Text is within the definition of a syllabus as defined in the Permanent License is a question of fact not properly resolved on a motion to dismiss.  *Id*. at 5-6.  In further support of dismissal, D'Youville elucidates that Plaintiffs' opposition "cherry-picked" a little more than a single page from an 18-page segment of the 530-page Subject Work.  D'Youville's Reply at 3-4. According to D'Youville, because the 18-page segment contains each of the license's separately enumerated "characteristics" that are within the Union Contract's definition of "syllabus," it follows that the entire 18-page segment of the Subject Work is a syllabus within the relevant definition, *id*. at 4-5, and urges the court to reject Plaintiffs' "attempt to excise, analyze in isolation, and claim" the Infringing Text is not a syllabus as defined in the Union Contract for purposes of the Permanent License.  *Id*. at 5.

As discussed, Discussion, *supra*, at 10-11, "syllabus" is defined in the Union Contract as "includ[ing] the course description, the expected course learning outcomes, course objectives, integrity policy, grading percentages, and list of suggested texts and materials."  Dkt. 1-8 at 74.  A plain review establishes that in addition to the project, the other headings within the Instructional Material include a course description, Dkt. 44-4 at 2, course objectives, *id*. at 2-4, course requirements, *id*. at 4-6, policies for student assessments and grading, *id*., at 10-13, academic integrity, *id*. at 13-14, a glossary of

terms, *id*. at 14, and administrative and technical matters relative to the course, *id*. at 15-21, resources available to students, *id*. at 21-23, and a course summary.  *Id*. at 23-25.  Significantly, D'Youville recognizes these additional portions of the Instructional Material, asserting their inclusion establishes the entire Instructional Material constitutes a syllabus.  D'Youville's Reply at 5.  The court disagrees.

In particular, that the Instructional Material sets forth separate sections for, *inter alia*, a course description, course objectives, academic grading policy, is properly construed as understanding the sections describe concepts that are independent from each other.  That the Permanent License defines "syllabus" to include some of these concepts strongly suggests that the syllabus is not to be interpreted as including others unenumerated.  To illustrate, it is inconceivable that if the Instructional Material included the text of an article authored by one of the Plaintiffs, such portion of the Instructional Material would be considered part of a syllabus merely because it appeared in the same document with other parts that undoubtedly meet the criteria for inclusion as part of a syllabus as defined in the Permanent License.

D'Youville's Motion and JBCN's Motion should therefore be DENIED as to the argument that the project contained in the Instructional Material is within the definition of a Permanent License, *i.e.*, syllabus, set forth in the Union Contract.

## 2.    Other Allegedly Infringing Material

D'Youville and JBCN argue that aside from the Instructional Material's inclusion of the project, Plaintiffs have failed to identify any other portion of the Subject Material allegedly copied and thus infringed by Defendants and therefore have not satisfied either the first or fourth *Kelly* elements.  D'Youville's Memorandum at 12-16; JBCN's

Memorandum at 15-19.  In opposition, Plaintiffs argue that the single example provided in support of their First Claim is sufficient to sustain a verdict for direct copyright infringement.  Plaintiffs' Response at 8-9.  In further support of dismissal, D'Youville argues Plaintiffs, by failing to specify any other portion of the Subject Work allegedly infringed, have waived any such argument.  D'Youville's Reply at 7-8.

### a.    First *Kelly* Element

With regard to the first *Kelly* element, D'Youville argues that beyond the Instructional Material, Plaintiffs fail to provide any other portion of the Subject Work that was allegedly copied and thus infringed and that such failure is especially significant because at many points, the Subject Work bears headings indicating the following text is a "syllabus."  D'Youville's Memorandum at 12-13.  JBCN argues in support of its motion on this point that Plaintiffs' mere "vague" references to "portions of the Subject Work" without specifying which portions of the 530-page Subject Work were allegedly infringed as required by the first *Kelly* element.  JBCN's Memorandum at 15.  In opposition, Plaintiffs do not directly address Defendants' arguments, asserting only that a single infringing act is sufficient to sustain a verdict for direct copyright infringement.  Plaintiff's Response at 8-9.  In further support of dismissal on this ground, D'Youville argues Plaintiffs, by failing to address this point, have waived any further claims beyond infringement of the project included in the Instructional Material.  D'Youville's Reply at 8.

As Defendants argue, despite attaching a copy of the 530-page Subject Work as an exhibit to the Amended Complaint, other than the project referenced in the Instructional Material, Plaintiffs have failed to identify any other portion of the Subject Work Defendants allegedly infringed. The court thus is unable to determine precisely

16

any other portion of the Subject Work Plaintiffs maintain were infringed by Defendants as well as whether such allegedly infringing conduct involved portions of the Subject Work beyond the scope of the Permanent License.  Plaintiffs thus have failed to sufficiently plead a direct infringement claim based on anything other than the project in the Instructional Material in satisfaction of the first *Kelly* element.

### b.    Fourth *Kelly* Element

With respect to the fourth *Kelly* element, both D'Youville and JBCN argue that aside from the project in the Instructional Material, Plaintiffs fail to allege with the requisite specificity "what the College actually did to infringe the copyright."  D'Youville's Memorandum at 13-16; JBCN's Memorandum at 15-19.[9]  Again, Plaintiffs have not addressed this argument other than to assert that a single infringing act, *i.e.*, the project within the Instructional Material, is sufficient to sustain a verdict for direct copyright infringement.  Plaintiffs' Response at 8-9.  In further support of dismissal, D'Youville argues Plaintiffs, by failing to address this argument, have waived it.  D'Youville's Reply at 7-8.

---

[9] The court notes JBCN also seeks dismissal of the First Claim for direct copyright infringement based on the inclusion of the project in the Instructional Material because Plaintiffs failed to satisfy the fourth *Kelly* element insofar as JBCN is only alleged to have used the project in connection with teaching an on-line program.  JBCN's Memorandum at 17-18.  A plain reading of the Amended Complaint, however, reveals many allegations are asserted against "Defendants," which includes both D'Youville and JBCN.  *See*, *e.g.*, Amended Complaint ¶ 23 ("Defendants duplicated portions of the Subject Work to enable adjunct and other instructors to teach courses at the College, at locations other than the College, including on-line instruction.  Defendants also used portions of the Subject Work to promote the College in various ways including description of its course offerings and describe degrees offered associated with the course work, and to create academic programs based on the Subject Work.").  Significantly, in the NLE Partnership Brochure Plaintiffs attached as an exhibit to the Complaint as Exh. I (Dkt. 1-9) ("the brochure"), the Professional Masters in Education is described as "launched" through a partnership between the College, JBCN, and ChalkBoard and "Designed for Educators Across Asia."  Dkt. 1-9 at 3.  The statements within the brochure, which is part of the judicial record and thus can be considered in connection with the pending motions, *see* Discussion, *supra*, at 12 n. 7, establish "Defendants" within the Amended Complaint ¶ 23 includes both D'Youville College and JBCN.  Accordingly, there is no merit to this argument.

"Subsumed within the fourth [*Kelly*] element—the infringing acts—is the issue of substantial similarity."  *McDonald*, 108 F.Supp.3d at 139 (citing *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 63 (2d Cir.2010) ("[i]n order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's") (internal quotation marks omitted).

In the instant case, similar to the first *Kelly* element, Plaintiffs, by failing to describe with any particularity what portions of the Subject Work other than the project within the Instructional Material, Defendants allegedly copied without Plaintiffs' permission in violation of the copyright protection, have failed to sufficiently allege any asserted copying by Defendants was illegal based on a substantial similarity between the Defendants' work and the protectable elements of the Subject Work.  This failure is of particular significance in light of the Permanent License contained within the Union Contract.

JBCN further argues that at most, the Amended Complaint's allegations of direct infringement are largely asserted only against the College, with a single allegation that "'the College website described courses . . . to be taught . . . in an online program through JBCN.'"  JBCN's Memorandum at 17 (quoting Amended Complaint ¶ 26). According to Defendant JBCN, the allegation concerns materials placed on D'Youville's website by the College but not any activity, including copying of Plaintiffs' copyright protected material, by JBCN.  *Id*.

18

As discussed, Discussion, *supra*, at 11, one of the required elements for a claim of direct copyright infringement is that the plaintiff demonstrate "the defendant has actually copied the plaintiff's work. . . ." *Abdin*, 971 F.3d at 66.  A plain reading of the Amended Complaint established, as JBCN argues, that Plaintiffs do not allege that JCBN engaged in any copying of Plaintiffs' copyright protected material as required to establish a claim for direct copyright infringement, including based on the Instructional Material and the project.  Plaintiffs therefore have failed to allege the fourth *Kelly* element with regard to JBCN.

Accordingly, Defendant JBCN's Motion should be GRANTED with regard to the First Claim for direct copyright infringement.  Further, except for the project in the Instruction Materials, D'Youville's Motions should be GRANTED with regard to the First Claim for which Plaintiffs fail to sufficiently plead the first and fourth *Kelly* elements.

### 3.    Scope of Permanent License

Plaintiffs alternatively argue that even if the Infringing Text was a syllabus as defined by the Permanent License, Defendants' use of the Infringing Text to teach courses for the Professional Masters Program to students in India exceeded the scope of the Permanent License which limits Defendants' use of syllabi to courses taught at D'Youville.  Plaintiffs' Response at 6-8.  In reply, D'Youville argues it is clear from the fact of the Instructional Material that it pertains to a D'Youville course and even bears the same course title and number as a course taught at the College.  D'Youville's Reply at 6-7.  In support of their respective arguments, both Plaintiffs and D'Youville rely on the declaration of one Sharan Kuruwa, JBCN's Chief Financial Officer (Dkt. 33-1)

("Kuruwa Declaration"), filed by JBCN in support of its earlier motion to dismiss (Dkt. 33). Plaintiffs' Response at 7-8; D'Youville's Reply at 6-7.

As relevant, the Permanent License provides that "the College shall retain a permanent license to use for pedagogical purposes associated with teaching courses at the College, any and all syllabi created, made, or originated by an employee in the course of his or her duties and responsibilities for the College." A plain reading of this language establishes the Permanent License does not limit use of any syllabi to the teaching of a course on the campus of D'Youville. Plaintiffs rely on the Kuruwa Declaration in support of their argument that no students located in New York were permitted to enroll in the Professional Masters program, and that the courses were taught exclusively to students in India. Plaintiff's Response at 7 (citing Kuruwa Declaration ¶ 5). As D'Youville, however, explains and Plaintiffs do not dispute, the bottom of each page of the allegedly Infringing Text of the Instructional Material indicates it was sourced from D'Youville's website, https://dyc.instruction.com/courses/ 20164/assignments/syllabus. D'Youville's Reply at 6 n. 3. The "Requirements" section of the Instructional Materials explains that the "D'Youville Department of Education (DOE) prepares candidates for careers as professionals in the field of education." Dkt. 44-4 at 4. Attendance, either face-to-face or in SKYPE format was mandatory at scheduled meetings. *Id*. In the "Learning Center & Accessibility Resources" portion of the Instructional Material, students of the Professional Masters program are referred to as students of D'Youville, and the students are directed to utilize the resources of the College's Learning Center through D'Youville's website. Dkt. 44-4 at 21. D'Youville further argues the only Professional Masters course identified by Plaintiffs for which

Defendants allegedly infringed, *i.e.*, EDU-622, was presented on-line by D'Youville, the educational entity that also conferred the degree to students who successfully completed the courses.  D'Youville's Reply at 7.  Further, Kuruwa explains that JBCN's responsibility with regard to the Professional Masters program was limited to marketing the program and enrolling students.  Kuruwa Declaration ¶ 7.  D'Youville, as the institution awarding the degree, had sole responsibility for setting the criteria for applications and admissions, *id*., and potential students could not apply for admission through either the JBCN or NLE website, but were directed to D'Youville's website.  *Id*. ¶¶ 7-8.

Based on the allegations of the Amended Complaint, the documents attached, and documents of which the court may take judicial notice, it is not plausible that a reasonable jury would find Defendants' use of any portion of the Instructional Material meeting the definition of a syllabus was beyond the scope of the Permanent License. Accordingly, Defendants' Motions should be GRANTED on this ground.

**B.    Secondary Liability for Infringement**

In their Second and Third Claims, Plaintiffs seek to recover for, respectively, contributory and vicarious copyright infringement.  Amended Complaint, Second and Third Claims.  Both D'Youville and JBCN argue that absent a plausible claim for primary infringement, Plaintiff's Second and Third Claims alleging secondary infringement also fail.  D'Youville's Memorandum at 16; JBCN's Memorandum at 19.  Plaintiffs do not advance any argument in opposition to dismissal of these claims, and D'Youville argues such failure establishes Plaintiffs have abandoned the claims.  D'Youville's Reply at 9.

Plaintiffs' failure to oppose dismissal of the Second and Third Claims is tantamount to acquiescing in Defendants' arguments that such claims are not sufficiently pleaded.  *See Murillo-Roman v. The Pension Boards – United Church of Christ*, 2024 WL 246018, at * 13 n. 8 (S.D.N.Y. 2024) (considering the plaintiff to have abandoned those claims for which the plaintiff failed to respond in opposition to the defendants' Rule 12(b)(6) motion to dismiss, citing cases including *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 704 n.19 (S.D.N.Y. 2011) (noting that the plaintiff abandoned his claims where they "do not appear anywhere in his opposition despite defendants' arguments" against them); *Marom v. Town of Greenburgh*, 2022 WL 17584279, at *7 (S.D.N.Y. Dec. 12, 2022) (finding claim abandoned where the plaintiff declined to respond to the defendants' arguments on that claim); *Guzman v. Macy's Retail Holdings, Inc.*, 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010) ("failure to adequately brief an argument constitutes waiver of that argument at [the] motion to dismiss stage" (quotation marks and citation omitted))).  Accordingly, both D'Youville's Motion and JBCN's Motion should be GRANTED with regard to the Second and Third Claims.  Alternatively, the court considers whether the Amended Complaint sufficiently alleges any secondary copyright infringement claim.

"Secondary liability for copyright infringement may be imposed on a party that has not directly infringed a copyright, but has played a significant role in direct infringement committed by others, for example by providing direct infringers with a product that enables infringement."  *Arista Records LLC v. Lime Group LLC*, 784 F.Supp.2d 398, 422 (S.D.N.Y. 2011) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,* 545 U.S.913, 929-30 (2005); and *Sony Corp. v. Universal City Studios,* 464

U.S. 417, 434-35 (1984)).  "The rationale for secondary liability is that a party who distributes infringement-enabling products or services may facilitate direct infringement on a massive scale, making it 'impossible to enforce [copyright protection] effectively against all direct infringers.'"  *Id*. (quoting *Grokster*, 545 U.S. at 930).  "In such circumstances, 'the only practical alternative is to go against the distributor of the copying device for secondary liability.'"  *Id.* (quoting *Grokster*, 545 U.S. at 930)).

"Without a showing of a direct copyright infringement, secondary liability cannot be maintained."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citing *Metro-Goldwyn-Mayer Studios Inv. v. Grokster Ltd.*, 545 U.S. 913, 930 (2005), and *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 40 (2d Cir. 2005)).  To recover for secondary copyright infringement, however, "a plaintiff must first establish direct [copyright] infringement by the relevant third party, *i.e.*, the party that received the infringement-enabling device."  *Arista Records LLC*, 784 F.Supp.2d at 423.

Here, because the undersigned is not recommending dismissal of the First Claim as against D'Youville, the court addresses whether the Complaint sufficiently alleges claims for contributory copyright infringement (Second Claim) or for vicarious copyright infringement (Third Claim) against either D'Youville or JBCN.

### 1.    Second Claim – Contributory Copyright Infringement

Defendants D'Youville and JBCN make essentially the same argument that Plaintiffs fail to allege a claim for contributory copyright infringement which requires alleging "the defendant, 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'"  D'Youville's Memorandum at 17 (quoting *Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 WL 296561, at * 2

(S.D.N.Y. Feb. 11, 2003) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971))); JBCN's Memorandum at 17-18 (same).  Although Plaintiffs make no argument in opposition to the pending motions to dismiss the contributory infringement claim, D'Youville further argues that Plaintiffs have not sufficiently alleged D'Youville met the "substantial participation" element for the contributory infringement claim.  D'Youville's Reply at 9.

"[A]lthough the Copyright Act does not expressly render anyone liable for infringement committed by another, it is well established, based on the common-law doctrine that one who knowingly participates in or furthers a tortious act is jointly and severally liable with the prime tortfeasor, that one who, with knowledge of the infringing activity, *induces*, causes or *materially contributes to the infringing conduct of another*, may be held liable as a 'contributory' infringer.  The knowledge element of such claim is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement."  *Arista Records, LLC*, 604 F.3d at 117-18 (italics in original; citations, and quotation marks omitted).

Contributory infringement "premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise."  *Grokster, Ltd.*, 545 U.S. at 937.  Specifically, a person 'infringes contributorily by intentionally inducing or encouraging direct infringement. . . .'"  *Spinelli*, 903 F.3d at 197 (citing *Grokster, Ltd.*, 545 U.S. at 930).  Thus, to state a claim for contributory infringement, the "plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement . . . . "  *Brought to Life Music, Inc.*, 2003 WL 296561, at * 2.   Merely providing the means or

opportunity to engage in wrongful conduct is not sufficient to state a claim for contributory infringement. *Brought to Life Music, Inc.*, 2003 WL 296561, at * 2 (means); *Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at * 37 (S.D.N.Y. Dec. 7, 1998) (opportunity). "A mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct would not even be enough to survive a motion to dismiss." *Quiroga*, 1998 WL 851574, at *37 (citing *Display Producers, Inc. v. Shulton, Inc.,* 525 F.Supp. 631, 633 (S.D.N.Y.1981)). Accordingly, "[a] plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement, for a claim of contributory infringement to stand." *Brought to Life Music, Inc.*, 2003 WL 296561, at * 2). In the instant case, the Amended Complaint fails to allege that D'Youville or JBCN "intentionally induced" or "encouraged direct infringement" by any of the other Defendants.

According to D'Youville, the only allegations in the Amended Complaint asserted in support of the Second Claim include that "'Defendants have encouraged, facilitated, and/or permitted the display, distribution, and reproduction of unauthorized copies of the Subject Work,'" D'Youville's Memorandum at 17 (quoting Amended Complaint ¶ 30), that "'Defendants knew or should have known that neither they nor the users were authorized' to take those actions," *id*. (quoting Amended Complaint ¶ 31), and a "vague reference to 'Defendant's provision of portions of the Subject Work to unauthorized parties.'" *Id*. (quoting Amended Complaint ¶ 32). The arguments asserted by JBCN are essentially the same. JBCN's Memorandum at 19-20.

As discussed, Discussion, *supra*, at 24, Plaintiffs have not argued in opposition insofar as the pending motions seek dismissal of the Second Claim. The court's plain

reading of the Amended Complaint shows Plaintiffs specifically allege that "upon information and belief, Defendants have contributed to the duplication, adaptation, and publication of sections of the Subject Work to offer and promote courses known as 'EDU 614,' 'EDU 605,' and 'EDU 622' in 2019 and beyond. Initially, allegations made upon information and belief that are unsupported by factual allegations are insufficient to survive a motion to dismiss for failure to state a claim. *See Kajoshaj v. New York City Dept. of Educ.*, 543 Fed.Appx. 11, 14 (2d Cir. 2013) (conclusory allegations unsupported by factual allegations "'stop[ ] short of the line between possibility and plausibility of entitlement to relief.'" (quoting Iqbal, 556 U.S. at 678)). Insofar as an example of such infringement is contained in Exhibit D," Amended Complaint ¶ 30, this allegation fails to assert any Defendant's participation in the claimed infringing activity was substantial as required, *see Quiroga*, 1998 WL 851574, at * 37 ("mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct would not even be enough to survive a motion to dismiss").

Specifically, with regard to D'Youville, the Amended Complaint, at most, alleges D'Youville merely provided JCBN with the means to engage in infringement by using portions of the Subject Work to promote the Professional Masters program. Amended Complaint ¶ 30. Further, a plain reading of the Amended Complaint establishes Plaintiffs allege D'Youville is a primary infringer, not a contributor infringer. Nor is there any allegation that JBCN ever provided any portion of the Subject Work to any other party, let alone with the requisite knowledge of any direct infringement.

Therefore, both pending motions should be GRANTED as to the Second Claim in favor of Defendants D'Youville and JBCN.

### 2.    Third Claim – Vicarious Copyright Infringement

Defendants D'Youville and JBCN also make essentially the same argument with regard to the Third Claim alleging vicarious copyright infringement in that Plaintiffs failed to allege D'Youville controlled the conduct of any of the direct infringers as required. D'Youville's Memorandum at 14-15; JBCN's Memorandum at 21-22.  Although Plaintiffs do not argue in opposition to dismissal of the Third Claim, D'Youville argues in further support of dismissal that Plaintiffs failed to allege D'Youville exercised the requisite degree of control over the other alleged infringers to state a plausible vicarious infringement claim.  D'Youville's Reply at 9.

A person "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'"  *Spinelli*, 903 F.3d at 197 (citing *Grokster, Ltd.*, 545 U.S. at 930).  Liability for "[v]icarious infringement requires that defendant possess the right and ability to supervise the infringing conduct."  *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 707 n. 22 (2d Cir. 1998) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)).  "Threadbare recitals" of the elements of vicarious copyright infringement are insufficient.  *See Klauber Brothers, Inc. v. URBN US Retail LLC*, 2022 WL 1539905, at ** 10-11 (S.D.N.Y. May 14, 2022) (dismissing for failure to state a claim plaintiff's "thin allegations" of contributory negligence that were "mere boilerplate" in alleging the defendant "had direct oversight or involvement" in the asserted infringing activity).

In the instant case, Plaintiffs allege that "Defendants College, JBCN, and Chalkboard, operating as the NLE Partnership, had the right and ability to supervise and control the activity of their partners, with respect to the content of the Subject Work,"

Amended Complaint ¶ 37, and that each Defendant had knowledge of each other's infringing activity, as well as a direct financial interest in the exploitation of the Subject Work.  *Id*. ¶ 38.  These allegations are nothing more than mere boilerplate recitations of a vicarious infringement claim which are insufficient to state a plausible vicarious liability claim.  *See Klauber Brothers, Inc.*, 2022 WL 1539905, at ** 10-11.

Accordingly, both D'Youville's Motion and JBCN's Motion should be GRANTED as to their request that the Third Claim be dismissed.

**C.    Fourth Claim – New York Civil Rights Law §§ 50 and 51**

Plaintiffs' Fourth Claim asserts violations of New York Civil Rights Law § 50 ("§ 50"), and § 51 ("§ 51").  As relevant here, § 50 prohibits the use "for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ,"  N.Y. Civ. Rights Law § 50, whereas § Section 51 authorizes a civil action for injunctive relief and damages for a violation of § 50 pertaining to a person's right to privacy.  Plaintiffs' Fourth Claim is based on Defendants' use of Plaintiffs' names and images, without Plaintiffs' permission, in promotional materials including posting Dr. Lochte's name, voice and image on D'Youville's YouTube site as recently as March 25, 2023, Amended Complaint, ¶ 18 ("the YouTube incident"), and including the names and credentials of Plaintiffs Drs. DeWaters, Lalley, and Williams, as well as Sister Nancy as "Full-time Undergraduate Faculty" in D'Youville's 2021-2022 undergraduate catalog.  *Id*. ¶ 19 ("the catalog incident").  Plaintiff maintains such unauthorized uses of Plaintiffs' names and images was primarily intended to assist the College in soliciting funds.  *Id*. ¶ 42.

In support of dismissal, Defendants argue Plaintiffs' claim based on the YouTube incident is time-barred under the relevant one-year statute of limitations which runs from the date of the first publication, here, before September 6, 2021, when Plaintiffs filed the original Complaint.  D'Youville's Memorandum at 20; JBCN's Memorandum at 23.  With regard to the catalog incidence, D'Youville argues the use of Plaintiffs' likenesses was not for the purpose of advertising or trade, D'Youville's Memorandum at 20, and JBCN argues the Amended Complaint is devoid of any allegation that JBCN was involved in the catalog's publication.  JBCN's Memorandum at 23.  Plaintiffs have not responded in opposition to the pending motions with regard to this claim, and D'Youville maintains that such failure establishes Plaintiffs have abandoned their Fourth Claim.  D'Youville's Reply at 9.

"To establish liability under Section 51, a plaintiff "'must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent.'"  *Electra v. 59 Murray Enterprises, Inc*., 987 F.3d 233, 249 (2d Cir. 2021) (quoting *Molina v. Phx. Sound Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002)).  "'A name, portrait or picture is used 'for advertising purposes' if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service,'" *id*. (quoting *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 278 (N.Y. 1991)), and is used for purposes of trade if it 'involves use which would draw trade to the firm.'"  *Id*. (quoting *Kane v. Orange Cty. Publ'ns.*, 649 N.Y.S.2d 23, 25 (2d Dep't 1996)).  "Because the statute was 'drafted narrowly to encompass only the commercial use of an individual's

name or likeness and no more,'" *id*. (quoting *Finger v. Omni Publ'ns. Int'l, Ltd.*, 566

N.E.2d 141, 141 (N.Y. 1990) (internal quotation marks and citation omitted)), "the

statute's terms are 'to be narrowly construed and strictly limited to nonconsensual

commercial appropriations of the name, portrait or picture of a living person.'" *Id*.

(quoting *Messenger v. Gruner Jahn Printing and Pub.*, 208 F.3d 122, 125 (2d Cir.

2000)).  Stated another way, to satisfy the advertising prong of § 50, the use of

Plaintiffs' names must have been intended "primarily to solicit funds . . . .*" Davis v.

Stratton*, 575 F.Supp.2d 410, 423 (N.D.N.Y. 2008), *rev'd on other grounds*, 360

Fed.Appx. 182 (2d Cir. 2010).

Here, as Defendants argue, the YouTube incident is subject to a one-year statute

of limitations set forth in N.Y. C.P.L.R. § 215(3) (requiring actions to be commenced

within one year including, *inter alia*, "an action to recover damages for . . . a violation of

the right of privacy under section fifty-one of the civil rights law. . . .").  Further, a cause

of action under § 51 "accrues on the date the offending material is first published."

*Nussenzqeig v. DiCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007).  As both Defendants

observe, "[t]he screenshot of the YouTube video pasted into the Amended Complaint

states that it was published 'four years ago,' meaning no later than March 25, 2019."

D'Youville's Memorandum at 20 (citing Amended Complaint ¶ 18); JBCN's

Memorandum at 23 (same).  As discussed, Discussion, *supra*, at 29, Plaintiffs have not

responded in opposition to Defendants' arguments in support of dismissal of the Fourth

Claim.

Because the applicable one-year limitations period ran from the date of the first

publication, the inclusion of Dr. Lochte's likeness on D'Youville's YouTube site on March

25, 2019, elapsed on March 25, 2021, more than one year prior to Plaintiffs'
commencement of this action by filing the original Complaint on September 6, 2021.
Accordingly, that portion of Plaintiff's Fourth Claim that is predicated on the YouTube
incident is time-barred.

Relative to the catalog incident, both Defendants argue the Fourth Claim fails
because the names and credentials of several of the Plaintiffs appearing in D'Youville's
2021-2022 Undergraduate Catalog were not included for the purposes of advertising or
trade as required for a § 50 violation, D'Youville's Memorandum at 20-21; JBCN's
Memorandum at 23-24, and such inclusion was merely incidental which is insufficient to
establish an invasion of privacy claim.  D'Youville's Memorandum at 21-23; JBCN's
Memorandum at 24-25.  Again, Plaintiff has not responded in opposition to these
arguments.

As Defendants observe, D'Youville's Memorandum at 21-22; JBCN's
Memorandum at 24, as alleged in the Amended Complaint, Plaintiff's Fourth Claim is
essentially identical to the Fourth Claim alleged in the original Complaint.  In the
September 29, 2022 R&R (Dkt. 35), which was adopted by District Judge Sinatra on
January 27, 2023 (Dkt. 36), the undersigned recommended dismissal of the Fourth
Claim because "[t]he inclusion of Plaintiffs' names in the College's 2021-22
Undergraduate Catalog, which was intended as a resource for existing college students,
does not meet the criteria for liability under §§ 50 and 51.  R&R at 22.  Not only does
the Amended Complaint not cure this deficiency, but it also fails to plausibly allege the
purpose of D'Youville's 2021-2022 catalog was to guarantee to any prospective student
that the faculty members included in the catalog would teach any student who enrolled

at D'Youville, rendering without merit Plaintiffs' allegation that Plaintiffs' names and credentials were listed in the catalog "primarily to solicit funds in the form of tuition and registration, which is their primary source of annual revenue . . . ."  Amended Complaint ¶ 19.

*Beck v. Manhattan College*, 537 F.Supp.3d 584 (S.D.N.Y. 2021) ("*Beck*"), on which the undersigned relied in recommending dismissal of the Fourth Claim as alleged in the original Complaint, R&R at 22-23, applies with equal force here.  In *Beck*, the court dismissed a breach of contract claim predicated on the defendant college's website and catalog of courses depicting life on the college's campus which the plaintiff alleged constituted a contractual obligation for the defendant college to provide enrolled students with in-person instruction and access to on-campus activities during the COVID-19 pandemic.  *Beck*, 537 F.Supp.3d at 586-88.  In dismissing the breach of contract claim, the court found the website excerpts did not promise students on-campus residence or to hold in-person classes, but merely advertised and described the general experience of studying and living on the college's campus.  *Id*.  Similarly, in the instant case, Plaintiffs' argument is tantamount to alleging D'Youville has a contractual obligation to provide any prospective student viewing D'Youville's 2021-2022 course catalog with courses taught by the professors whose names and credentials appear in such catalog.

Defendants further argue that the inclusion of any Plaintiff's name and credentials in D'Youville's 2021-2022 catalog is only incidental for which New York courts have refused to impose liability under §§ 50 and 51.  D'Youville's Memorandum at 22-23; JBCN's Memorandum at 24-25.   The Second Circuit has rejected a similar

invasion of privacy claim brought pursuant to §§ 50 and 51 where a former hospital resident sued the hospital for using his picture in the hospital's recruiting brochure published several years after the plaintiff left the hospital's employ. *D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 65 (2d Cir. 1998). In affirming the district court's decision, the Second Circuit agreed that the defendant hospital's use of the plaintiff's picture was an "incidental" use that was insufficient to sustain an invasion of privacy claim under §§ 50 and 51. *Id*. (affirming *D'Andrea v. Rafla-Demetrious*, 972 F.Supp. 154, 157 (E.D.N.Y. 1997)). In the instant case, D'Youville's inclusion of the names and credentials of several of the Plaintiffs in D'Youville's 2021-2022 catalog was likewise incidental and, thus, fails to support Plaintiffs' Fourth Claim for invasion of privacy in violation of §§ 50 and 51.

Defendants' pending motions to dismiss should therefore be GRANTED as to the Fourth Claim.

## 2.    Lack of Personal Jurisdiction

In moving to dismiss the Amended Complaint for failure to state a claim, Defendant JBCN also seeks dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2) ("Rule 12(b)(2)"), for lack of personal jurisdiction over JBCN. JBCN's Memorandum at 5-11. Plaintiffs have not responded in opposition to this argument, nor has JBCN filed any reply.

"In opposing a motion to dismiss for lack of personal jurisdiction, [the plaintiffs] bear[ ] the burden of establishing that the court has jurisdiction. . . ." *Grand River Enterprises. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (internal quotation marks and citation omitted). To defeat a motion to dismiss for lack of

personal jurisdiction made prior to discovery, as in the instant case, a plaintiff must make a *prima facie* showing of personal jurisdiction either through "legally sufficient allegations of jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990), or through its own affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  Here, Plaintiff's failure to argue the court has personal jurisdiction over JBCN is construed as conceding the point and JBCN's Motion should be GRANTED for lack of personal jurisdiction.  *See Felski v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (by failing to respond to defendants' argument regarding personal jurisdiction, plaintiff effectively conceded the point).  Nevertheless, because the matter is before the undersigned for a report and recommendation, the court considers JBCN's arguments.

Fed.R.Civ.P. 12(b)(2), provides for dismissal of an action by motion for lack of personal jurisdiction over the defendant.  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999).  Personal jurisdiction "is concerned with the relationship of a given defendant to the particular geographic area in which a case is brought."  *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 110 F.3d 861, 864 (2d Cir. 1997).  The burden of proving personal jurisdiction is on the party asserting it.  *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994) (citing cases).

Although lack of personal jurisdiction may be forfeited by failing to timely raise such defense. *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 60 (2d Cir. 1999), *cert. denied,* 530 U.S. 1244 (2000), here, JBCN has not forfeited such defense, but moves to dismiss for an asserted lack of personal jurisdiction. *Hamilton,* 197 F.3d at 60. Further, the fact that JBCN does not dispute Plaintiffs' copyright claims vests this court with subject matter jurisdiction based on federal question under 28 U.S.C. § 1331, does not automatically result in personal jurisdiction over non-domiciliary defendants. *See Armstrong v. Virgin Records, Ltd.,* 91 F.Supp.2d 628, 637 (S.D.N.Y. 2000) ("It is, after all, possible for a court to have subject matter jurisdiction over a particular set of claims, but not personal jurisdiction over a particular defendant."). Rather, in a federal question case like the instant case, where a defendant resides outside the forum state, and the relevant federal statute does not contain its own jurisdictional provisions, such as the Copyright Act, personal jurisdiction is determined by reference to the relevant jurisdictional statutes of the forum state. *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *Fort Knox Music, Inc v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000)). Accordingly, the court looks to New York State law to determined whether JBCN is subject to personal jurisdiction in this court.

It is undisputed that JBCN is a foreign corporation incorporated and maintaining its principal place of business in Mumbai, India. Amended Complaint ¶ 11; JBCN's Memorandum at 3-4. The New York statutes relevant here include N.Y. Civ. Prac. L. & R. §§ 301 ("§ 301") and 302 ("§ 302__"), as interpreted and applied by New York courts. In particular, as interpreted and applied by New York courts, under § 301, a court has personal jurisdiction over a foreign defendant if the defendant "is engaged in such a

continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in this jurisdiction." *Delagi v. Volkswagen AG of Wolfsburg, Germany*, 278 N.E.2d 895, 896 (N.Y. 1972). Here, Plaintiffs do not maintain that JBCN was ever physically present in New York, nor do Plaintiffs' contest JBCN's assertion that its presence in New York, if at all, is limited to JBCN's operation of an internet website.

The instant record does not contain sufficient information to permit the court to determine whether JBCN's activities in New York through its website sufficiently qualify as "regular, systematic and permanent" so as to amount to "doing business" in New York, and Plaintiffs do not assert JBCN is subject to personal jurisdiction under § 301. A defendant whose contacts with New York are so insignificant that the defendant cannot be considered to be "doing business" in New York for purposes of § 301, however, may nevertheless be subject to personal jurisdiction in New York under its long-arm statute based on a showing of lesser contacts with the state provided the cause of action arose from such contacts. N.Y. Civ. Prac. L. & R. § 302; *Bensusan Restaurant Corp. v. King*, 126 F.3 25, 26 (2d Cir. 1997). Accordingly, the court does not consider whether JBCN is subject to personal jurisdiction under § 301, but only under New York's long-arm statute, § 302, particularly, either § 302(a)(1) or § 302(a)(3)(ii), the two provisions on which JBCN's argument is based.

**A.    § 302(a)(1)**

As relevant here, § 302(a)(1) allows for a court to "exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent[ ] transacts any business within the state or contracts anywhere to supply goods

or services in the state. . . ."  N.Y. Civ. Prac. L. & R. § 302(a)(1).  Demonstrating that a defendant "transacted business" in New York so as to be suable in New York under § 302(a)(1), provided the cause of action arises from that transaction, requires considerably less contact with New York than required to establish jurisdiction under § 301 based on "doing business" in New York which can subject the defendant to suit on an unrelated cause of action.  *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762-63 (2d Cir. 1983).  Section 302(a)(1) allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'"  *Fort Knox Music Inc.*, 203 F.3d at 196 (quoting *Parke-Bernet Galleries v. Franklin*, 256 N.E.2d 506, 508-09 (N.Y. 1970)).  Section 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'"  *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 229 (W.D.N.Y. 1997) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988), and citing *Beacon Enterprises, Inc.*, 715 F.2d at 764).

The jurisdiction test under § 302(a)(1) is, therefore, qualitative rather than quantitative, and the inquiry should be designed to determine whether the "non-resident defendant has engaged in some purposeful activity in this State in connection with the matter at suit."  *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 75 (N.Y. 1975).  Jurisdiction under § 302(a)(1) "is proper 'even though the defendant never enters New York, so long as the defendant's activities here were purposeful and

there is a substantial relationship between the transaction and the claim asserted.'"
*Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *Deutsche Bank Sec., Inc.
v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 1160)) (further quotation marks
and citation omitted).

     "To determine the existence of jurisdiction under section 302(a)(1), a court must
decide (1) whether the defendant 'transacts any business' in New York and, if so, (2)
whether this cause of action 'aris[es] from' such a business transaction."  *Best Van
Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Deutsche Bank Sec.,
Inc.*, 850 N.E.2d at 1142).  "Courts look to 'the totality of the defendant's activities within
the forum to determine whether a defendant has transacted business in such a way that
it constitutes purposeful activity satisfying the first prong of the test."  *Id.* (internal
quotation marks, citations, and brackets omitted). "As for the second part of the test, a
suit will be deemed to have arisen out of a party's activities in New York if there is an
articulable nexus, or a substantial relationship, between the claim asserted and the
actions that occurred in New York."  *Id.* (same).  In other words, "[i]f the defendant has
'transacted business' in New York, it is suable on any cause of action that arises out of
the transaction."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.
1985).  In the instant case, JBCN argues that at most, Plaintiff could only assert JBCN
"transacted business" within New York through JBCN's website, but that JBCN's
website only passively provides information accessible by people in New York which is
insufficient to support personal jurisdiction here.  JBCN's Memorandum at 7.

     "When analyzing whether a defendant's internet activity rises to the level of
purposeful activity sufficient to satisfy Section 302(a)(1), courts apply a 'sliding scale'

test based on the level of a website's interactivity." *Audiovox Corp. v. South China Enterprise, Inc.*, 2012 WL 3061518, at * 3 (E.D.N.Y. July 26, 2012) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 236, 251 (2d Cir. 2007) ("'[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)))).  "A website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction."  *Id*. (citing *ISI Brands, Inc. v. KCC Int'l, Inc.,* 458 F.Supp.2d 81, 86 (E.D.N.Y.2006) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); and *Stephan v. Babysport, L.L.C.,* 499 F.Supp.2d 279, 287 (E.D.N.Y.2007) (finding that the defendant's website did not rise to the level of transacting business in New York because "[c]ustomers cannot complete a contract for sale via the [defendant's] website")).  If, however, "a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction."  *Id*. (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.,* 138 F.Supp.2d 449, 456 (S.D.N.Y.2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant."), and *Mattel, Inc. v. Adventure Apparel,* 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (finding that the plaintiff's "order[ing] allegedly infringing merchandise from Adventure over its web site, using his credit card, and Adventure['s] shipp[ing] that merchandise into New York" was "sufficient to bring Adventure into the category of a defendant 'transact[ing] any

business,' via the internet, in New York within the meaning of N.Y. C.P.L.R. 302(a)(1)"
because "[t]his activity not only involved the exchange of payment and shipping
information but, moreover, was a commercial transaction that was actually
consummated on line")).

Here, JBCN argues, and Plaintiffs do not dispute, that JBCN's website is not
interactive with regard to the Professional Masters program; rather, both the JBCN and
NLE websites provide only passive information about the program. JBCN
Memorandum at 8 (citing Kuruwa Declaration ¶¶ 6-8). Nor do Plaintiffs allege JBCN's
website is maintained in New York or that JBCN's website offers anything other than a
passive conduit to D'Youville's website. Significantly, Kuruwa avers that from 2017 until
early 2022, the NLE website contained information about the Professional Masters
program, and JBCN's website contained links to the NLE website for users seeking to
obtain information about the Professional Masters program. Kuruwa Declaration ¶ 6.
According to Kuruwa, JBCN was only responsible for marketing the Professional
Masters program in Asia and administering student enrollment, but applications to the
program were exclusively handled by D'Youville, which set application and admissions
criteria, received and reviewed applications, decided which students to admit, and was
also the institution that was to award the degree. *Id*. ¶ 7. Prospective students seeking
to apply to the Professional Masters program were redirected from the NLE website to
D'Youville's website, *id*. ¶ 8, and no student was permitted to enroll in or pay tuition for
the program on any website controlled or operated by JBCN including the NLE website.
*Id*. ¶ 9. Only three students, all located in India, enrolled in the Professional Masters
program and such students attended the courses through D'Youville's on-line platform.

*Id*. ¶ 10.  Kuruwa's averments, uncontested by Plaintiffs, establish JBCN's website was not "interactive" for purposes of the Professional Masters program.  Nor do Plaintiffs allege any other conduct by JBCN that could subject JBCN to personal jurisdiction for transacting business in New York in accordance with § 302(a)(1).

### B.    § 302(a)(3)(ii)

Pursuant to § 302(a)(3)(ii), personal jurisdiction in New York exists over "any non-domiciliary who in person or through an agent, commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."  "The revenue requirement 'is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character.'"  *Pincione v. D'Alfonso*, 506 Fed.Appx. 22, 26 (2d Cir. 2012) (quoting *LaMarca v. Pak–Mor Mfg. Co.,* 735 N.E.2d 883, 886-87 (N.Y. 2000) ("*LaMarca*") (internal quotation marks and citations omitted)).  Here, the tortious act is Plaintiffs' copyright violations alleged against JBCN.  *See Penguin Group (USA) Inc. v. American Buddha*, 946 N.E. 159, 161-62 (N.Y. 2011) (considering copyright infringement a tort for purposes on long-arm jurisdiction).

Relevantly, in *LaMarca*, the Court of Appeals held that the defendant, a Texas corporation with a manufacturing facility in Virginia, was "inherently engaged in interstate commerce," with a New York distributor and district representative, national advertising, and New York sales, all of which established the defendant derived substantial revenue from interstate commerce for purposes of long-arm jurisdiction

under § 302(a)(3)(ii). *LaMarca*, 735 N.E.2d at 887. In contrast, in the instant case, Kuruwa's averments, Kuruwa's Declaration ¶ 12, unchallenged by Plaintiffs, that JBCN's revenue is entirely generated within India, and that JBCN earns no revenue from international sources, establish JBCN does not earn substantial revenue from international commerce and, thus, is not subject to personal jurisdiction in New York pursuant to § 302(a)(3)(ii).

### C.    Due Process

JBCN further argues that even if its participation in the Professional Masters program satisfies the requirements for long-arm jurisdiction under either § 302(a)(1) or § 302(a)(3)(ii), this court's exercise of personal jurisdiction over JBCN would not comport with due process requirements. JBCN's Memorandum at 10-11. Plaintiffs have not responded to this argument, nor has JBCN filed any reply.

"The exercise of long-arm jurisdiction over [a d]efendant[ ] by a New York Court must also satisfy constitutional due process standards." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (citing *Agency Rent a Car System, Inc. v. Gran Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir. 1996) ("In order to satisfy the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'" (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))). In particular, New York's requirements for jurisdiction over a nonresident defendant "'are consonant with the due process principle that a defendant must have purposefully availed itself of the privilege of doing business in the forum.'" *Relevant Sprots, LLC v. United States Soccer*

42

*Federation, Inc.*, 61 F.4th 299, 306 (2d Cir. 2023) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1995) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)), and due process will be offended by the court's exercise of personal jurisdiction over a defendant whose contacts with New York are "'random,' 'fortuitous,'  or 'attenuated' . . . ."  *Id*. (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Here, JBCN argues it did not offer for sale or deliver any services in New York and thus did not purposefully avail itself of any privilege of conducting business activities in New York, nor was the Professional Masters Program available to people within the United States and any website controlled by JBCN contained information directed only to students outside the United States who took the course while located in India.  JBCN's Memorandum at 10-11.  JBCN further maintains it never had access to the course materials, and had no interaction with Plaintiffs, JBCN did not employ or pay Plaintiffs, terminate Plaintiffs' employment, nor had any access to the Subject Work and did not provide students enrolled in the Professional Masters program with on-line access to the program courses and had no input regarding the course curriculum.  *Id*. at 11.  The circumstances JBCN describes, unchallenged by Plaintiffs, establish that JBCN's contacts with New York were too attenuated such that haling JBCN into court in New York would not comport with federal due process requirements.

JBCN's Motion seeking dismissal of the Amended Complaint should be GRANTED as to its argument that JBCN is not subject to personal jurisdiction in New York.

### 3.    Failure to Effect Timely Service

JBCN further seeks dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(5) for insufficient service of process based on Plaintiffs' failure to timely serve the Amended Complaint on JBCN.  *Id*. at 11-13.  Plaintiffs have not responded in opposition to this argument, nor has JBCN filed any reply.  JBCN's argument on this point is lifted from its memorandum filed in support of JBCN's earlier motion filed September 26, 2022, to dismiss the original Complaint.  *See* Dkt. 33 at 10-12.  That motion, which was filed only a few days prior to the September 29, 2022 R&R, was never addressed but was terminated based on the filing of the Amended Complaint.  See Dkts. 35, 36, 44, and Dkt. entry dated April 4, 2023.

Pursuant to Fed.R.Civ.P. 4(m), "a complaint must be served within 90 days of the commencement of the action."  *Hernandez v. Lira of New York Inc.*, 2022 WL 280887, at * 2 (S.D.N.Y. Jan. 31, 2022).  "'The filing of an amended complaint . . . does not restart the [90] day period for service under Rule 4(m)' with respect to defendants named in the original complaint."  *Id*. (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 607 (S.D.N.Y. 2012); and citing *Khanukayev v. City of New York*, 2011 WL 5531496, at *4 (S.D.N.Y. Nov. 15, 2011), *Wilson v. Diocese of New York of Episcopal Church*, 1998 WL 82921, at *9 (S.D.N.Y. Feb. 26, 1998), and 4B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1137 (4th ed.)).  "Although proper service of an amended complaint within the service period may satisfy Rule 4(m), . . . if service of the

original complaint on the moving Defendant[ ] was not proper, Plaintiffs have failed to timely serve." *Id.* (citing *Rosado-Acha v. Red Bull Gmbh*, 2016 WL 3636672, at *9 (S.D.N.Y. June 29, 2016)).

In the instant case, JBCN was served with the original Complaint on July 22, 2022, *i.e.*, 319 days after Plaintiffs filed the original Complaint on September 6, 2021, in violation of Fed.R.Civ.P. 4(m)'s requirement that a defendant "be served within 90 days after the complaint is filed, [or] the court - - either on motion or on its own after notice to the plaintiff - - must dismiss the action without prejudice against that [unserved] defendant or order that service be made within a specified time."  Although there is no indication JBCN was served with a copy of the Amended Complaint which was filed March 28, 2023, the filing on May 5, 2023 of a consent motion seeking an extension of time for D'Youville and JBCN to answer (Dkt. 47), strongly implies JBCN was served with the Amended Complaint within the 90 days permitted under Fed.R.Civ.P. 4(m). Nevertheless, Plaintiffs failed to timely serve JBCN with the original Complaint, and the filing of the Amended Complaint did not restart Rule 4(m)'s 90-day clock in which to effect service.

It is undisputed that JBCN is an Indian company.  Although there is an exception to Rule 4(m)'s 90-day service requirement for service in a foreign country, the exception does not apply unless the plaintiff actually attempted to effect service within the proscribed 90 days.  *See DEF v. ABC*, 366 Fed.Appx. 250, 253 (2d Cir. 2010) (Rule 4(m)'s foreign country service exception did not apply where the defendants waited two and a half years to attempt service, never effected service, and did not explain why they were unable to effect service).  Because the foreign service exception of Rule 4(m)

does not apply here, Plaintiff's failure to timely serve the original Complaint requires dismissal of the action against JBCN in the absence of Plaintiffs' establishing "good cause" for the delay as provided for by Rule 4(m) (permitting extension of the 90 days in which to effect service where the plaintiff "shows good cause for the failure.").  Plaintiffs, however, have not established the requisite good cause and the relevant statutes of limitation have now expired as to all claims asserted against JBCN.  Significantly, where an amended pleading when filed would be beyond the applicable limitations period, a Rule 4(m) dismissal "without prejudice" will not defeat an affirmative defense that refiled claims are time-barred.  *See Conover v. Lein*, 87 F.3d 905, 908-09 (7th Cir. 1996) (dismissals "without prejudice" under Rule 4(m) are not necessarily dismissals "without consequences" if the relevant statutes of limitations have run, and dismissal should have been with prejudice).

Accordingly, JBCN's Motion should be GRANTED based on Plaintiffs' insufficient service of process.

**4.    Leave to Replead**

D'Youville, anticipating Plaintiffs will request leave to further replead, argues such request should be denied asserting the fact that the Amended Complaint does not contain any evidence or information that was not available when Plaintiffs filed the original Complaint establishes any further amendments would only be "different formulations of the same allegations, based on the same evidence, that have now been insufficient twice."  D'Youville's Memorandum at 23.  JBCN similarly argues denial of the Amended Complaint should be without leave to replead.  JBCN's Memorandum at 25. In opposition, Plaintiffs argue that should any of their claims be found legally insufficient

to state a claim, Plaintiffs should be granted leave to replead such claims asserting Plaintiffs are prepared to plead further specific facts.  Plaintiffs' Response at 9.  In reply, D'Youville argues that Plaintiffs have abandoned their First Claim insofar as it relies on alleged "infringing text" as well as the Second, Third, and Fourth Claims which Plaintiffs have not opposed.  D'Youville's Reply at 9-10.

Generally, a motion to dismiss under Rule 12(b)(6) for failure to state a claim is without prejudice and with leave to file an amended complaint curing the deficiencies of the dismissed original complaint.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1992) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Where, however, the plaintiff's pleadings' deficiencies are substantive such that better pleading will not cure them as, for example, with regard to lack of subject matter jurisdiction or time-barred claims, leave to replead would be futile, thus warranting dismissal without the opportunity to amend.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (where leave to replead would be futile dismissal may be with prejudice and without leave to file an amended complaint).

Here, as D'Youville argues, the Amended Complaint does not contain any evidence or information that was not available when the original Complaint was filed, D'Youville's Memorandum at 23, and Plaintiffs have not argued in opposition dismissal of the Second, Third, and Fourth Claims.  D'Youville's Reply at 9-10.  Accordingly nothing in the record suggests the deficiencies with the Amended Complaint can be overcome by further pleading, and dismissal of the Amended Complaint should be with prejudice and without leave to replead.

## <u>CONCLUSION</u>

Based on the foregoing, D'Youville's Motion (Dkt. 49), should be DENIED in part and GRANTED in part; JBCN's Motion (Dkt. 50), should be DENIED in part and GRANTED in part.  The action should continue only with regard to Plaintiffs' First Claim asserting direct copyright infringement against Defendant D'Youville based on the inclusion of the project in the Instructional Material.


Respectfully submitted,


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        February 9, 2024
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      February 9, 2024
            Buffalo, New York